EVANS et al. v. HUDSON COAL CO.
No. 9421.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 21, 1947.
Decided Feb. 10, 1948.

James G. McDonough, of Scranton, Pa. (J. Frank Connolly, of Scranton, Pa., on the brief), for appellants.

Robert R. Bruce, of New York City (R. S. Houck and Francis D. Mahon, both of Scranton, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiffs appellants, 19 workmen, members of the Union, United Mine Workers of America, sued the defendant, The Hudson Coal Company, the appellee, an "Anthracite Operator" within the purview of the Award of the Anthracite Coal Strike Commission and subsequent agreements and resolutions of the Board of Conciliation,[1] to recover wages for both regular and overtime hours of work within the period from October 24, 1938 to April 30, 1946, and for liquidated damages, attorneys' fees and costs. See Section 7(a) and 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207(a) and 216(b). Beginning with the Award of the Anthracite Coal Strike Commission in 1903, subsequent agreements between the Union and the Anthracite Operators, effected where necessary by resolution of the Board of Conciliation, covered the relations between the Mine Workers and the Anthracite Operators. These agreements, including some of those referred to in note 1 supra, contain provisions for arbitration of disputes between the Mine Workers and the Operators carried over from Clause IV of the Award of the Commission, 1903, pp. 7-9 of the pamphlet referred to. Clause IV is set out below.[2] The plaintiffs did not set up any of these contracts in their complaint because they were of the opinion that Sec-

---

[1] See the pamphlet entitled "Award of the Anthracite Coal Strike Commission—Subsequent Agreements and Resolutions of Board of Conciliation—July 1, 1946", published by the Anthracite Board of Conciliation, Markle Bank Building, Hazleton, Pa., a copy of which is attached to the defendant's application for stay, and specifically the Agreements marked Exhibits "N", Agreement of November 13, 1937, "O", Agreement of May 26, 1939, "P", Agreement of May 20, 1941, "Q", Supplementary Agreement of January 9, 1943, "R", Agreement of March 8, 1944, and "S", Agreement of May 19, 1945, contained therein.

See also the 1903 Award of the Anthracite Strike Commission, Exhibit "A", and the succeeding Agreements referred to in the first paragraph of this note, and also Exhibits "B", Agreement of May 7, 1906, "C", Agreement of April 29, 1909, "D", Agreement of May 20, 1912, "E", Agreement of May 5, 1916, "F", Supplementary Agreement of November 15, 1918, "G", Supplementary Agreement of September 29, 1919, "H", Agreement of September 2, 1920, "I",

Agreement of September 11, 1922, "J", Agreement of September 19, 1923, "K", Agreement of February 17, 1926, "L", Agreement of August 8, 1930, and "M", Agreement of May 7, 1936, also included in the pamphlet.

[2] In pertinent part as follows:

"The Commission adjudges and awards: 'That any difficulty or disagreement arising under this award, either as to its interpretation or application, or in any way growing out of the relations of the employers and employed, which cannot be settled or adjusted by consultation between the superintendent or manager of the mine or mines, and the miner or miners directly interested, or is of a scope too large to be so settled or adjusted, shall be referred to a permanent joint committee, to be called a Board of Conciliation, to consist of six persons, appointed as hereinafter provided. That is to say, if there shall be a division of the whole region into three districts, in each of which there shall exist an organization representing a majority of the mine workers of such district, one of said Board of Concilia-

tion 7[3] of the contract of May 20, 1941,[4] carried over in the later agreements,[5] was in violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The defendant did not answer. It filed an application for a stay pursuant to Section 3 of the United States Arbitration Act, 9 U.S.C.A. § 3 and attached as exhibits, inter alia, all of the contracts referred to in Note 1 supra, which, of course, included Section 7 of the contract of May 20, 1941 and, by reference Clause IV of the Award of the Commission of 1903.

The plaintiffs filed an objection, in the nature of a motion, to this application, asking that the defendant's application for a stay be dismissed upon the ground that it was not in accordance with Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The gravamen of the objection was to the effect that Rule 12(b) required an answer and that the application for a stay was not such a pleading as was required by the Rule. The plaintiffs also filed with their motion a pleading entitled "Answer to application for stay until arbitration." The answer al-leges that the contract of May 20, 1941 and the other contracts relied on by the defendant, were illegal in that the provisions of Section 7 were not in accordance with the provisions of the Fair Labor Standards Act. The court below held that the issues in the instant suit were referable to arbitration under the agreements between the Mine Workers and the Operators and granted a stay. The plaintiffs have appealed.

■ Rule 12(b) (1) will authorize the defendant to make an application for a stay pending arbitration if, as a matter of law, the issues presented by the instant suit are referable to arbitration. The pertinent language of Rule 12(b) (1) provides that a defense of "lack of jurisdiction over the subject matter", at the option of the pleader, may be asserted "by motion". If the issues presented by the instant suit are referable to arbitration, the court below, other conditions of the Arbitration Act being met, must grant the stay and hold its hand until arbitration be completed. It is thus, pending arbitration, deprived of jurisdiction of the subject matter. It fol-

---

tion shall be appointed by each of said organizations, and three other persons shall be appointed by the operators, the operators in each of said districts appointing one person.

"The Board of Conciliation thus constituted, shall take up and consider any question referred to it as aforesaid, hearing both parties to the controversy, and such evidence as may be laid before it by either party; and any award made by a majority of such Board of Conciliation shall be final and binding on all parties. If, however, the said Board is unable to decide any question submitted, or point related thereto, that question or point shall be referred to an umpire, to be appointed, at the request of said Board, by one of the circuit judges of the third judicial circuit of the United States, whose decision shall be final and binding in the premises.

* * *.' "

3 Section 7 provides as follows:

"The hourly rates of employees, exempted from the provisions of the 7-hour day under the agreement of May 7, 1936, who have not been adjusted to a 40 hour basis and who regularly work a fixed number of hours of 42 hours per week, or more, shall be established for the period May 1, 1941, to September 30, 1941, by adding 7½% to their weekly earnings as calculated under the provisions of said agreement and dividing the sum by the hours regularly employed weekly plus one-half of the hours worked in excess of forty hours; and for the period October 1, 1941, to April 30, 1943, by adding 10% to their weekly earnings as calculated under the provisions of said agreement and dividing the sum by the hours regularly employed weekly plus one-half the hours worked in excess of forty hours.

* * * * *

"The wage adjustments provided herein for employees customarily working forty-two hours a week, or more, constitute full settlement and satisfaction of all their claims, if any, for overtime against any signatory operator arising out of employment prior to May 1, 1941."

4 See p. 77-78 of the pamphlet and in particular, Exhibit "P".

5 See in particular Supplementary Agreement of January 9, 1943, Exhibit "Q", p. 84 of pamphlet, Agreement of March 8, 1944, Exhibit "R", p. 98 of pamphlet, Agreement of March 19, 1945, Exhibit "S", p. 109 of pamphlet, and Agreement of June 6, 1946, Exhibit "T", p. 124 of pamphlet.

lows that if the issues of the instant suit are referable to arbitration, the motion for a stay under Section 3 of the Arbitration Act fulfills the requirements of Rule 12(b).

The substantial question, however, is whether the issues of the instant suit are referable to arbitration. We think the answer to this question must be in the affirmative for the reasons hereinafter stated. Many of the more difficult questions respecting the application of the Fair Labor Standards Act in reference to the Arbitration Act have been solved, we think, by previous decisions of this court which have dealt with the identical Award of the Anthracite Coal Commission presently before us, with the same subsequent contracts and resolutions of the Board of Conciliation and in some instances with the provisions of Section 7 of the contract of May 20, 1941. See Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 4, 149 A.L.R. 271; Watkins v. Hudson Coal Co., the defendant in the instant suit, 3 Cir., 151 F.2d 311, 319, and Donahue v. Susquehanna Collieries Co., 3 Cir., 160 F.2d 661, 664. We shall not deal with these decisions in detail. The following will suffice.

In the first Donahue appeal we held that a claim for unpaid overtime wages was one "growing out of the relations of employers and employed" and squarely within the arbitration provisions of Article IV of the 1903 Award, as perpetuated in the subsequent contracts. We ruled also that there was nothing in the provisions of the Fair Labor Standards Act which precluded arbitration of claims between the Mine Workers and the Operators. We concluded that the arbitration process should not be "choked" and remanded the cause for proceedings not inconsistent with the views expressed by us. See in particular 138 F.2d at pages 6, 7.

In the Watkins case we passed specifically on the status of Section 7 of the contract of May 20, 1941, quoted in Note 3 supra, in relation to the Fair Labor Standards Act Referring to Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 and Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1250, 89 L.Ed. 1711, we concluded that in order for a formula, such as that which was purported to be set up in Section 7, to meet the tests laid down by the Supreme Court "it must not be a mere mathematical cloak under which to continue the same payment practices as hitherto". We made it clear, however, that under the principle of the Missel case there could be a genuine practical decrease in wages, based upon collective or individual bargaining. We concluded from the evidence that the formula was directed only to one goal, viz., "to continue the old methods of payment for work while ostensibly meeting the requirements of the [Fair Labor Standards] Act technically * * *" and that technicalities were not enough. We pointed out as well that treating the last clause of Section 7, quoted in Note 3 supra, as a waiver, the terms of the Fair Labor Standards Act could not be avoided by such a device. We concluded by stating, and this was the gist of our decision presently applicable to the instant case, that the questions of the days and hours on which a claimant worked and "the *calculation of the amount of money to which he may be entitled under the* [Fair Labor Standards] *Act. * * *"*[6] is the kind of problem which is properly referable either to a special master or an arbitrator and that since the parties by contract had provided for arbitration the reference to arbitration was entirely appropriate. In short, we held that despite the inadequacy and illegality of Section 7 in the light of the Fair Labor Standards Act the Board of Conciliation could proceed to develop a formula which would meet all the requirements of the Act and apply it in the arbitration proceedings to the claims of the Mine Workers there involved. See 151 F.2d at page 320. We reiterate that ruling in the instant case.

---

[6] Emphasis added.

974

In the second Donahue appeal, we quoted our statement in the first Donahue appeal that "we should not choke the arbitration process" but went on to say that in the Watkins appeal, "we merely decided the issues which were not for arbitration and noted that there remained other matters for arbitration". It is possible that the language from the second Donahue appeal last quoted has been misunderstood. If so, it is our present duty to clarify the issues. It was not our intention to indicate that the arbitrators could not inaugurate and put into effect a new, proper and legal formula in lieu of that presently contained in Section 7 to the end that the requirements of the Fair Labor Standards Act might be effected. Our intention in fact was to the contrary. The scope of Article IV of the 1903 Award is broad enough to permit such a result. We adhere to our ruling in the Watkins case and for clarity's sake, even at the danger of useless repetition, state again that the "calculation of the amount of money to which * * * [a claimant] may be entitled under the Act * * * is the kind of problem which is properly referable * * * to * * * an arbitrator". A new, proper and legal formula to replace that presently contained in Section 7 can and must be arrived at by the Board of Conciliation acting pursuant to Clause IV. But if the arbitration process proceeds to an award which is not in accordance with the provisions of the Fair Labor Standards Act or any other applicable statute, Sections 10 and 11 of the Arbitration Act provide means for its vacation, rehearing, modification or correction. The court below will be open for those ends.

Time, energy and money have been expended by both Mine Workers and Operators in litigation in the courts of this Circuit. We are of the opinion that these expenditures have been unrewarding. Mine Workers and Operators have made a series of valid and binding agreements for arbitration. They must submit to the arbitration upon which they have agreed.

The order of the court below granting a stay pending arbitration will be affirmed.