**MONTREAL SHIPPING CO., Limited v. 9,110 TONS OF STEEL BILLETS et al.**

**No. 431 of 1948, Admiralty.**

United States District Court
E. D. Pennsylvania.
March 10, 1949.

408

James B. Doak, of Philadelphia, Pa., for libellant.

T. E. Byrne, Jr., of Philadelphia, Pa., for respondents.

McGRANERY, District Judge.

Montreal Shipping Co., libellant, was the timechartered owner of the Panamanian steamer Actor. It chartered the vessel to Pacific Scrap Co., and the terms of the charter-party provided, inter alia, that the ship would transport a full cargo of steel from a Japanese port to a United States port. Various rights and duties of the Owner (Montreal Shipping Co.) and Charterer (Pacific Scrap Co.) were set out in the agreement. Paragraph 15 provided, inter alia: "If there is a strike or lockout affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, *receiver* shall have the option of keeping vessel waiting until such strike of lockout is at an end against paying half demurrage after expiration of the time provided for discharge or of ordering the vessel to a safe port where she can safely discharge without risking being detained by strike or lockout * * *." (Italics supplied.)

The libel alleges that the Actor arrived in Philadelphia and berthed at the pier designated by the receiver of the cargo, Bethlehem Steel Company, on November 13, 1948. At that time, a strike of stevedores and longshoremen was in progress. The libellant's agents gave notice to the agents of the receiver of the cargo calling attention to the existence of the strike and requesting the decision of the receiver, as provided in the clause quoted above. After expiration of the discharge time, with no election from the receiver, libellant gave due notice to the receiver of intention to hold it liable for demurrage, according to the terms of the charter-party. Libellant filed its libel on December 7, on which day there was allegedly due $3,750 demurrage. The discharge of cargo from the Actor was not completed until several days after the libel was filed, and additional demurrage was incurred during this period. Pursuant to the prayer in the libel, an attachment issued against the 9,100 tons of steel billets discharged from the Actor and a citation against the Bethlehem Steel Company, as receiver of the cargo.

Bethlehem's answer admits that it was the receiver of the cargo, but pleads paragraph 19 of the charter-party, which provided: "19. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at San Francisco, one to be appointed by each of the parties hereto; and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

At the same time, it filed a petition for stay pending arbitration, relying upon this portion of the charter-party and the pertinent portions of the United States Arbitration Act, § 3, 9 U.S.C.A. § 3. Libellant then filed a motion to dismiss the petition for a stay pending arbitration. This motion was argued before me.

The opposing position of the parties presents a clear-cut issue: does the arbitration clause confer any rights upon the receiver of the cargo? Bethlehem asserts that when it bought the cargo it also bought the rights of the Charterer to invoke the arbitration clause. Libellant contends that the charter party was a precisely drawn agreement, and that by its terms the arbitration clause applies only to disputes between "Owners and the Charterers." Beth-

lehem argues that to accept this construction of the charter-party is an injustice, compelling it to be bound by the Charterer's liabilities under the agreement without the reciprocal advantage of any rights the Charterer had. This contention has a surface plausibility which fades upon closer examination. It is admitted in the answer to the complaint that the cargo was discharged subject to the terms of the charter-party. In fact, Bethlehem's answer to the motion to dismiss the petition for stay alleges that " * * * it is a purchaser for value of the cargo laden upon the Steamship 'Actor' and that the said purchase was made under and subject to all of the terms of the said charter-party * * *." If the charter-party provides, then, that only the Owner and the Charterer shall invoke the arbitration clause there is no injustice in denying its use to a third party who knowingly bought cargo subject to its terms. Moreover, entirely apart from the notion of fairness, I do not think that Bethlehem would contend that it assumed all of the Charterer's liabilities under the agreement, including, for example, demurrage in connection with the loading of the cargo in Japan and payment of freight. Yet that is the logical end of its basic argument. Therefore, I do not think that Bethlehem's position that it acquired all of the Charterer's rights because it assumed all of the Charter's obligations is well taken. It may be that there is some other agreement under which Bethlehem assumed the obligation of paying for the cargo, which specifically incorporates the arbitration clause. Cf. Petition of A/S Falkefjell, D.C., 78 F. Supp. 282; The Thrasyvoulos, D.C., 28 F. Supp. 434, but cf. The Ciano, D.C., 58 F. Supp. 65. But nothing of this sort has been pleaded, and the terms of the charter-party, on which Bethlehem relies solely compels me to grant the motion to dismiss the petition for stay. The petition for stay is, in effect, a motion under Federal Rules of Civil Procedure, rule 12(b) (1), 28 U.S.C.A., contending that this Court does not have jurisdiction over the subject matter of this proceeding. See Evans v. Hudson Coal Co., 3 Cir., 165 F.2d 970, 972. Dismissal of the petition will allow the case to proceed, and an order will be so entered.