**JOHN ASHE ASSOCIATES, INC. and Sharp Electric, Inc.**

v.

**ENVIROGENICS CO. et al.**

**Civ. A. No. 76–949.**

United States District Court,
E. D. Pennsylvania.

Jan. 25, 1977.

Alan R. Kutner, Philadelphia, Pa., for plaintiffs.

Daniel J. Brooks, Robert G. Bernstein, Frederick E. Sherman, Layton & Sherman, New York City, Gerald F. Tietz, Abraham, Pressman & Tietz, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This is a diversity contract action. Presently before this Court are motions, filed by defendants Aerojet-General Corporation ("Aerojet") and Chemical Construction Corporation ("Chemical"),[1] to dismiss the complaint for lack of subject matter jurisdiction and for summary judgment.[2] See Fed.R. Civ.P. 12(b), 12(b)(6) and 56.

The contract between Aerojet and Chemical, the contractors, and plaintiffs John Ashe Associates ("Ashe") and Sharp Electric, Inc. ("Sharp"), the subcontractors, called for the installation of electrical conduits and wires at the Public Service Electric and Gas Facility in Burlington Township, New Jersey, pursuant to defendants' Specification PS–7538. In their complaint, Ashe and Sharp allege breach of contract on the part of Aerojet and Chemical for failure to reimburse Ashe and Sharp for costs incident to the purchase and installation of replacement materials when materials required by Specification PS–7538 proved inadequate for their intended purpose.

Defendants' 12(b)(1) motion is predicated upon this Court's lack of subject matter jurisdiction as a result of an agreement between the parties to submit all disputes arising under the contract to arbitration, in accordance with the procedural rules of the State of California, and to enter judgment upon the arbitration award only in the Superior Court of the State of California in the district in which arbitration occurred. Defendants' Rule 56 motion incorporates the arguments advanced pursuant to Rule 12(b)(1) and argues in the alternative that, even if the Court determines that it has subject matter jurisdiction, the agreement of the parties to arbitrate and to limit the forum available for the entry of judgment upon the award would preclude the Court from granting plaintiffs any relief. Plaintiffs dispute defendant's allegations of an obligation to arbitrate or to limit the forum available to the parties for review of the award or for the granting of further relief, and argue that the breach of contract action is properly before this Court for resolution.

Initially, we hold that this Court has an independent basis of federal subject matter jurisdiction based upon diversity of citizenship and the amount in controversy under 28 U.S.C. § 1332(a). *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 408 (2d Cir. 1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1959); *Warren Brothers Co. v. Community Building Co.,* 386 F.Supp. 656, 658 (M.D.N. C.1974); *Litton RCS, Inc. v. Pennsylvania Turnpike Commission,* 376 F.Supp. 579, 585 (E.D.Pa.1974), *aff'd,* 511 F.2d 1394 (3d Cir. 1975). Ashe is a Pennsylvania corporation with its principal place of business in Pennsylvania. Sharp is a New Jersey corporation with its principal place of business in New Jersey. Aerojet is an Ohio corporation with its principal place of business in California, and it is registered to do business in

---

1. According to the affidavit of Frederick E. Sherman, submitted in support of defendants' motion to dismiss, defendant Envirogenics Company ("Envirogenics"), at the time of the making of the contract, was a division of Aerojet-General Corporation. At the present time, however, Envirogenics no longer exists. The motion is, therefore, made solely on behalf of Aerojet and Chemical. (*See* Sherman Affidavit at ¶ .2.)

2. Defendants' second motion was submitted pursuant to Rule 12(b)(6), Fed.R.Civ.P., and captioned a motion to dismiss for failure to state a claim upon which relief could be granted. However, because material (affidavits, exhibits) outside the pleadings has been presented to and accepted by the Court in support of defendants' motion, the Rule 12(b)(6) motion is properly converted to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56.

the Commonwealth of Pennsylvania. Chemical is a Delaware corporation with its principal place of business in New York, and it is registered to do business in the Commonwealth of Pennsylvania. The parties are of diverse citizenship, and the amount in controversy is alleged to be greater than $10,000, exclusive of interest and costs. Thus, federal subject matter jurisdiction independently and properly lies under 28 U.S.C. § 1332(a). We, therefore, will deny defendants' motion to dismiss for lack of subject matter jurisdiction.[3]

■ We turn then to defendants' motion for summary judgment, the determination of which must begin with an assessment of the plaintiffs' duty to arbitrate. When confronted with an agreement to arbitrate, a court's review is limited to a determination of whether the allegation of the duty to arbitrate is supported on the face of the contract. *National R.R. Passenger Corp. v. Missouri Pacific R.R. Co., supra,* 501 F.2d at 427. The analysis is threefold: (1) whether federal or state substantive law governs construction of the contract; (2) whether the parties are bound by the arbitration provision of the contract; and (3) whether the dispute in question is covered by the arbitration clause.

■ In construing a contract providing for arbitration, the Court must first deter-mine whether federal or state substantive law applies. *Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra,* 271 F.2d at 409; *Warren Brothers Co. v. Community Building Co., supra,* 386 F.Supp. at 663; *Litton RCS, Inc. v. Pennsylvania Turnpike Commission, supra,* 376 F.Supp. at 585. Federal law will govern when the contract evidences a transaction "involving commerce," *Litton RCS, Inc. v. Pennsylvania Turnpike Commission, supra*; otherwise, state law applies. An examination of the complaint in the instant case reveals the requisite transaction "involving commerce." The contract is between several corporations which are incorporated and which do business in a number of states; it involves construction of a New Jersey public utility facility by a Pennsylvania and a New Jersey corporation, and it requires the transport of personnel and materials in interstate commerce. Accordingly, federal substantive law, as embodied in the federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* will be applied.

■ We must next determine whether the contract requires the parties to arbitrate their disputes. As we recently stated in *Vespe Contracting Co. v. Anvan Corp.,* 399 F.Supp. 516, 520 (E.D.Pa.1975), a case remarkably similar to the instant one, arbitration is a matter of contract and the

---

**3.** An agreement between the parties to a contract to submit disputes to arbitration does not impair the constitutionally derived diversity jurisdiction of a federal district court. The arbitration agreement limits the scope of the court's review, not its subject matter jurisdiction. *Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra,* 271 F.2d at 408; *Warren Brothers Co. v. Community Building Co., supra,* 386 F.Supp. at 658; *Litton RCS, Inc. v. Pennsylvania Turnpike Commission, supra,* 376 F.Supp. at 585 (E.D.Pa.1974). *See also National Railroad Passenger Corp. v. Missouri Pacific Railroad Co.,* 501 F.2d 423, 427 (8th Cir. 1974); *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711, 714 (7th Cir. 1967). *Evans v. Hudson Coal Co.,* 165 F.2d 970, 972 (3d Cir. 1948), is not inapposite. In *Evans,* defendant's motion for a stay pending arbitration was filed pursuant to Section 3 of the federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The plaintiffs objected on the ground that the motion for a stay was not comparable to the answer required by Rule 12(b)(1), Fed.R.Civ.P. The court ruled that the motion for a stay was properly filed pursuant to Rule 12(b)(1) and that once the stay was granted the trial court was deprived of subject matter jurisdiction pending arbitration. 165 F.2d at 972. We construe the statement in *Evans* that the court was deprived of subject matter jurisdiction pending arbitration to mean only that, when confronted with an arbitration agreement, a court's scope of review, but not its subject matter jurisdiction, is limited to a determination of whether the issue presented in the instant case is referable to arbitration. This construction is supported by the fact that the *Evans* court did not dismiss the entire cause of action for lack of subject matter jurisdiction, but rather relied upon the trial court's independent basis of jurisdiction, *i. e.,* federal question jurisdiction under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207(a), 216(b), to retain subject matter jurisdiction pending arbitration. *Id.*

parties cannot be forced to arbitrate something to which they did not agree.

The contract in issue contains three separate parts: (1) Purchase Order 40461,[4] (2) Specification PS–7538 [5] and (3) the General Conditions.[6] The relevant portions of each part are outlined in full in the margin. The plaintiffs do not deny being bound by the contract as embodied in the Purchase Order and Specification PS–7538, which were specifically incorporated therein. Ashe and Sharp do deny that the "General Conditions" and, consequently, the arbitration clause were incorporated by reference into the Purchase Order.

■ Although there is no clear and unequivocal reference in any of the documents to an incorporation of the "General Conditions" into the Purchase Order, we do find that the "General Conditions" were incorporated by reference into Purchase Order 40461. Several factors support incorporation. First, the affidavit of Albert W. Taglieri, submitted in support of defendants' motion, states that defendant Envirogenics' normal procedure for soliciting bids for sub-

---

**4.** The Purchase Order contained two provisions relevant to this motion: (1) The sentence, " 'Standard Terms and Conditions for fixed Price Purchase Orders,' No. CO–084—54 is attached herewith and made a part hereof by reference" (the sentence was in large bold letters with a typewritten line drawn through it); and (2) the notation, "JOB-Electric Installation per Envirogenics Company Specification PS–7538, Bid Item 1 less New Jersey State and local use taxes."

**5.** Specification PS–7538 contains two operative parts: (1) "Special Conditions" and (2) "Electrical Work."

    I. SPECIAL CONDITIONS
    F. PLANT START–UP
    Start-up will be performed by Envirogenics Company. The Contractor shall provide the services of one electrical foreman and two qualified competent journeymen to work with Envirogenics personnel for ten 8–hour working days, after all work under this contract is satisfactorily completed. In the event the time required or number of personnel required is more or less than the three men for ten days, additions or deletions will be made to the contract price in accordance with the "Changes—Changed Conditions" article of the "GENERAL CONDITIONS."
    G. MODIFICATIONS TO THE GENERAL CONDITIONS
    1. *Changes—Changed Conditions*
    The Contractor shall submit with the Bid Form the percentages requested in subparagraphs C(2)(a)6, C(2)(a)7 and C(2)(a)8 of Article 7 of the "GENERAL CONDITIONS."
    *   *   *   *   *   *
    3. *Article No. 2—Definitions*
    Delete subparagraphs a., b., and c. and insert the following in lieu thereof:
    *   *   *   *   *   *
    "c. *This contract* means the terms and conditions of the General Conditions and these specifications and drawings, all included in the purchase order modified only by addenda, amendments or change orders in writing issued by Envirogenics Company."

    *   *   *   *   *   *
    II. ELECTRICAL WORK
    *   *   *   *   *   *
    B. SCOPE OF WORK
    The electrical subcontractor shall furnish and install all conduit, wiring, equipment, and devices in accordance with the GENERAL and SPECIAL CONDITIONS and as defined by this Specification and the contract.

**6.** The General Conditions, in pertinent part, are as follows:

    7. *Changes—Changed Conditions.*
    *   *   *   *   *   *
    (c)(2) When the cost for a change cannot be resolved in accordance with 7.c(1), the Cost of Labor and Material Basis shall be used.
    [a] (sic) Cost of Labor and Materials Basis
    The Seller shall furnish such additional labor and materials, equipment and apparatus required to make the requested change, in conformity with the provisions of the Contract, and the Buyer will pay the Seller therefor:
    *   *   *   *   *   *
    5. The actual disbursement made by the Seller for all use, sales and excise taxes and all other taxes, whatever their designation, which attach to or are measured by the value or cost of any of the materials, equipment, or apparatus, or by the salaries and/or wages of direct labor used on such additional work.
    *   *   *   *   *   *
    7. An allowance of — per cent on the total of items 1, 2, 3, 4, 5 and 6 for profit.
    34. *Disputes*
    Any dispute arising under this order which is not disposed of by agreement between the parties shall be decided by arbitration in accordance with part 3 of Title 9 of the Code of Civil Procedure of the State of California. A judgment based on the award shall be entered in the Superior Court of the State of California in the county having jurisdiction thereof.

contracts was to send all prospective bidders the Specifications for the construction project being bid upon, as well as a document labeled "General Conditions," which were intended by Envirogenics to be a part of all their contracts (see Taglieri Affidavit at ¶ 2).[7] Second, paragraphs F and G of Specification PS–7538 repeatedly and in bold type refer to the standard "General Conditions." Next, the Special Conditions section of Specification PS–7538 defined "this contract" in I–G(3)(c) as including the provisions of the "General Conditions."[8] Finally, plaintiffs could not have completed or submitted the contract bid to defendants without having made specific reference to the "General Conditions."[9] The completion of the "Cost of Labor and Material Basis" was a mandatory part of the bid proposal. It could not have been completed without a copy of the "General Conditions." This fact alone demonstrates that plaintiffs had a copy of the "General Conditions" and were on notice as to the important relationship between the Purchase Order, Specifications and General Conditions. While we do not lightly dismiss the lack of actual notice to plaintiffs of the incorporation, they are nonetheless held to have been given sufficient constructive notice to support the incorporation by reference of the "General Conditions" in their entirety into the contract. See Ogden Development Corp. v. Federal Insurance Co., 508 F.2d 583, 586 (2d Cir. 1974); Rehart v. Clark, 448 F.2d 170, 174 (9th Cir. 1971); Vespe Contracting Co. v. Anvan Corp., supra, 399 F.Supp. at 516.

■ The next area of inquiry is whether the arbitration clause covered the dispute in question. Gavlik Construction Co. v. H. F. Campbell Co., 389 F.Supp. 551, 554 (W.D.Pa. 1975). The general federal policy in favor of arbitration requires that doubts as to whether an arbitration clause should be interpreted to cover the asserted dispute be resolved in favor of arbitration, unless a court can state with positive assurance that the dispute was not meant to be arbitrated. Hussey Metal Division v. Lectromelt Furnace Division, 471 F.2d 556, 557–558 (3d Cir. 1972); Vespe Contracting Co. v. Anvan Corp., supra, 399 F.Supp. at 520.

■ As previously quoted, the arbitration clause in question states:

Any dispute arising under this order which is not disposed of by agreement between the parties shall be decided by arbitration in accordance with Part 3 of Title 9 of the Code of Civil Procedure of the State of California. . . .

The dispute here concerns the alleged monetary damages resulting to plaintiffs as a result of their compliance with the contract specifications for electrical wire which were later found to be inadequate for the project and required replacement. This dispute is clearly one arising under the contract and is, therefore, subject to arbitration. See Coenen v. R. W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir. 1972); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768, 770 (3d Cir. 1967). The Court, therefore, being satisfied that the issue involved in plaintiffs' action is referable to arbitration under the written agreement between the parties, will order the parties to proceed to arbitration.

Finally, we must determine whether the parties, by their agreement, have precluded this Court from granting any judicial relief subsequent to arbitration.

■ The parties agreed that a judgment upon the arbitration award would be entered solely in the appropriate district of the Superior Court of the State of California.[10] Agreements to limit entrance of judgment to a single forum are enforceable. Monte v. Southern Delaware County, 335 F.2d 855, 857 (3d Cir. 1963); Monte v.

---

7. Plaintiffs do not deny having received a copy of both the Specification PS–7538 and a document labeled "General Conditions." Plaintiffs do dispute the applicability or the incorporation of the "General Conditions" and, in particular, the arbitration clause to their contract.

8. See note 5 supra.

9. See note 6 supra.

10. See note 6 supra.

*Southern Delaware County,* 321 F.2d 870, 874 (3d Cir. 1963); 9 U.S.C. § 9. The parties are bound to comply with this agreement by virtue of the incorporation by reference of the provision containing this agreement into the contract. This Court is bound to respect and to enforce the contractual obligations of the parties. Accordingly, we will grant defendants' motion for summary judgment.[11]

11. The Court notes that an agreement to limit the entrance of judgment upon an award to a single forum is distinguishable from an agreement to limit the scope of relief available to the parties subsequent to the granting of the award. Sections 9 and 10 of the federal Arbitration Act permit motions for modification, correction or vacation of an arbitration award, under limited circumstances, to be filed in the United States District Court for the district in which arbitration occurs. The parties have not contractually waived this right to relief. The contract in this case requires the parties to arbitrate disputes in accordance with the procedures of the State of California and to enter judgment upon the arbitration award solely in the Superior Court of the State of California. Therefore, in the unlikely event that arbitration takes place in the Eastern District of Pennsylvania, the prevailing party may file the appropriate pleadings in this Court for further relief pursuant to Sections 10 and 11 of the federal Arbitration Act, 9 U.S.C. §§ 10, 11.