In re BARNEY'S, INC., et al., Debtors.

BNY LICENSING CORP., and Barney's, Inc., Plaintiffs,

v.

ISETAN OF AMERICA INC. and Barneys Japan Company Limited, Defendants.

Bankruptcy Nos. 96 B 40113— 96 B 40133 (JLG). Adv. Proc. No. 96/9055A.

United States Bankruptcy Court, S.D. New York.

March 25, 1997.

LeBoeuf, Lamb, Greene & MacRae L.L.P., New York City, for Debtors.

Hughes, Hubbard & Reed, New York City, for Isetan of America, Inc. and Barneys Japan Company Limited.

### DECISION ON DEFENDANTS' MOTION FOR AN ORDER STAYING LITIGATION AND COMPELLING ARBITRATION

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Isetan of America, Inc. ("IOA") and Barneys Japan Company Limited ("Barneys Japan" and together with IOA, the "defendants"), move (i) as to Barneys Japan pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, to stay this adversary proceeding in favor of an arbitration proceeding commenced by Barney's Inc. ("Barney's") and its wholly-owned subsidiary BNY Licensing, Inc. ("BNY Licensing" and together with Barney's, the "plaintiffs") against Barneys Japan and its majority shareholder, Isetan Company Limited ("Isetan"), and alternatively under Bankruptcy Rules 7004 and 7012 to dismiss the complaint for lack of personal jurisdiction; and (ii) as to IOA, pursuant to § 105 of the Bankruptcy Code and 28 U.S.C. § 1334(c) to stay this adversary proceeding or abstain therefrom pending resolution of the arbitration. At the parties' request, we adjourned that portion of the motion seeking to dismiss Barneys Japan from this litigation. We deny the balance of the motion.

#### Facts

The parties do not dispute the underlying facts. Barney's and BNY Licensing are chapter 11 debtors in possession in this court. Isetan is a Japanese corporation with offices in Tokyo, Japan. IOA is a wholly owned U.S. subsidiary of Isetan. Barneys Japan is a Japanese joint stock company that is owned by Isetan (80%) and Reen Japan Corp. (20%), a U.S. corporation controlled by the family of the late Barney Pressman, Barney's founder.

Pursuant to a June 1, 1989 agreement, Barney's granted BNY Licensing the exclusive right and license to grant sublicenses to use Barney's and Barneys New York trademarks (the "Trademarks") in Japan, Taiwan, Korea, Singapore, Thailand, Malaysia, Hong Kong, Indonesia, India, China and the Philippines (the "Licensed Territory") for an initial period of June 1, 1989 through March 31, 2011.

On or about September 19, 1989, BNY Licensing granted Isetan the exclusive right and license to use the Trademarks in the Licensed Territory initially through March 31, 2011 (as amended from time to time, the "Operating License Agreement"). Simultaneously, Barney's and Isetan entered into an agreement concerning, among other things, merchandising, training, advertising, promotion and visual display services (as amended from time to time, the "Technical Assistance Agreement", and together with the Operating License Agreement, the "Agreements"). The Operating License Agreement obligates Isetan to pay to BNY Licensing an annual minimum royalty ("Minimum Royalty") and certain percentage royalties (with the Minimum Royalty, the "Royalties"). The agreement specifies how Isetan pays the Royalties and imposes certain reporting requirements on it (the "OLA Reporting Requirements"). Likewise, the Technical Assistance Agreement mandates that Isetan pay fees to Barney's (the "Fees") and imposes reporting requirements on it.

Pursuant to a loan agreement dated December 21, 1989 ("Yen Loan"), IOA paid BNY Licensing four billion Japanese yen. In connection with that loan, and by agreements dated December 21, 1989, BNY Licensing and Barney's, respectively, pledged to IOA and granted to IOA corresponding security interests in certain "Collateral" (the "BNY Pledge" and "Barney's Pledge", and collectively, the "Pledges"). With irrelevant

exceptions, the "Collateral" or "Interests Pledged" under the Pledges consists of BNY Licensing and Barney's "right, title and interest to receive all monies, [R]oyalties and [F]ees" under the Operating License and Technical Assistance Agreements. *See* BNY Pledge ¶ 2; Barney's Pledge ¶ 2. The security interests granted to IOA thereunder consist of "security interest[s] in the Collateral in accordance with the Uniform Commercial Code." BNY Pledge ¶ 4; Barney's Pledge ¶ 4.

By separate letters dated December 21, 1989, BNY Licensing and Barney's directed Isetan to pay IOA the Royalties and Fees due to them under the Agreements.

By agreement dated on or about June 1, 1990, among BNY Licensing, Isetan and Barneys Japan, Isetan assigned to Barneys Japan, and Barneys Japan accepted and assumed, all of Isetan's rights and obligations under the Operating License Agreement. Simultaneously, by separate agreement among Isetan, Barney's and Barneys Japan, Isetan assigned to Barneys Japan, and Barneys Japan accepted and assumed all of Isetan's rights and obligations under the Technical Assistance Agreement. Isetan also executed guarantees to BNY Licensing and Barney's, respectively (the "Guaranties"), guaranteeing Barneys Japan's performance under the Agreements.

The Agreements and Guaranties require the parties to arbitrate disputes, differences or claims arising thereunder. *See* Operating License Agreement ¶ 20(b); Technical Assistance Agreement ¶ 11(b); Guaranties p. 1. They also provide that Japanese law controls the resolution of those disputes. *See* Operating License ¶ 20(a); Technical Assistance Agreement ¶ 11(a); Guaranties p. 1. By contrast, the Yen Loan and Pledges require that disputes be litigated under New York law either in the United States District Court for the Southern District of New York or the Supreme Court of the State of New York, County of New York. Loan Agreement ¶ 7.4; Pledge Agreements ¶ 9.4.

By separate Letters of Direction dated December 28, 1993 (the "Letters of Direction"), BNY Licensing and Barney's directed Barneys Japan to pay to IOA the Royalties or Fees, as appropriate, due them under the Agreements.

Plaintiffs contend that Barneys Japan failed to (i) pay Royalties owing under ¶¶ 6(a) and (b) of the Operating License Agreement, (ii) comply with the OLA Reporting Requirements under ¶ 6(b)(iii), and (iii) satisfy certain quality commitments under ¶¶ 1(b), 5, 7 and 8 of the agreement. They contend that Barneys Japan's failure to pay Royalties is an incurable default under ¶ 16(a)(i) of the Operating License Agreement giving BNY Licensing the right to terminate the agreement by sending written notice to Isetan and Barneys Japan specifying the effective date of termination. They argue that Barneys Japan's alleged breach of the OLA Reporting Requirements and the quality commitments will constitute an event of default under ¶ 16(a)(ii) of the Operating License Agreement giving BNY Licensing the right under ¶ 16(b) to terminate the agreement, unless it is cured within 60 days of BNY Licensing's notice thereof. They maintain that Barneys Japan's alleged defaults under the Operating License Agreement triggered defaults under the Technical Assistance Agreement.

On September 19, 1996, they commenced a proceeding before the American Arbitration Association against Isetan and Barneys Japan seeking among other things, an award declaring the Agreements terminated by their terms and directing Isetan and Barneys Japan to pay to BNY Licensing the present value of the Minimum Royalties to become due after the termination date through the expiration date under the Operating License Agreement. *See* September 16, 1996 Statement of Claim Attached to Demand for Arbitration ("Statement of Arbitration Claim") ¶¶ 22–37 and 43. In their December 31, 1996 statement of defenses and counterclaim to the Arbitration Claim, Isetan and Barneys Japan contend, among other things, that in accordance with the Letters of Direction, and through accounts set up at Yasuda Trust & Banking Co., Ltd. in Tokyo, Japan, Barneys Japan paid IOA all the Royalties due to BNY Licensing under the Operating License Agreement. They also contend that until the institution of the arbitration proceeding, Barneys and BNY Licensing fully accepted and

.. 

acknowledged the propriety of that payment method. Among other things, they seek judgment declaring that the Letters of Direction are legally valid and binding under the Operating License Agreement, and that Barneys Japan's performance thereunder has not been, and will not be, in breach of any obligation to Barney's and BNY Licensing.

Plaintiffs also contend that the UCC–1 financing statements that defendants filed in 1990 to perfect the security interests granted to IOA in the Collateral under the Pledges lapsed in 1995 without defendants timely filing continuation statements. They commenced this adversary proceeding on September 19, 1996, seeking (i) to avoid IOA's allegedly unperfected liens in the Collateral under § 544(a)[1] of the Bankruptcy Code and to preserve them for their estates pursuant to § 551[2] of the Bankruptcy Code, (ii) to avoid and recover the post-petition Royalty payments made to IOA under §§ 549[3] and 550[4] of the Bankruptcy Code, and (iii) for a declaratory judgment that the income stream from the Royalties constitutes an asset of BNY Licensing's estate under § 541 of the Bankruptcy Code and that defendants' wrongful failure to remit Royalties to BNY Licensing would violate §§ 362(a)(3), (4), and/or (7) of the Bankruptcy Code and for a judgment directing defendants to turn over future Royalties to BNY Licensing.

By agreement, the last day for defendants to answer the complaint was January 27, 1997. On January 22, 1997, plaintiffs moved for summary judgment herein. Defendants made this motion on January 27, 1997.

### Discussion

We have subject matter jurisdiction of this matter under 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O).

Plaintiffs contend that IOA is in default under the complaint because it has not filed an answer and this motion is not authorized by Fed.R.Civ.P. 12 and Bankruptcy Rule 7012. A motion for a stay of litigation pending arbitration is not among the seven pre-answer motions listed in Rule 12(b). However, that list is not exclusive. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE

**1.** That section provides in relevant part as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> \*   \*   \*   \*   \*   \*
>
> 11 U.S.C. § 544(a).

**2.** Section 551 of the Bankruptcy Code states as follows:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.
>
> 11 U.S.C. § 551.

**3.** Section 549 of the Bankruptcy Code provides in relevant part that the trustee may avoid a transfer of property of the estate made after the commencement of a bankruptcy case if it "is not authorized under this title or by the court." 11 U.S.C. § 549(a).

**4.** Among other things, § 550 contains the mechanism by which the trustee can recover property transferred (or its value) pursuant to a transaction that is voidable under §§ 544 or 549. *See* 11 U.S.C. § 550.

§ 1360, at 431 (1990). Defendants are not in default because a motion to stay litigation is a pre-answer motion within the scope of Rule 12(b). *See, e.g., Questech Capital Corp. v. Flight Dynamics, Inc.,* No 83 Civ. 6986, 1984 WL 327 (S.D.N.Y. May 7, 1984) ("a motion to stay proceedings has been characterized as a pre-answer motion which, because it involves matters of judicial administration, is within the inherent powers of the court incident to the court's authority to regulate actions pending before it"); *Evans v. Hudson Coal Co.,* 71 F.Supp. 152 (M.D.Pa.1947) (motion for stay pending arbitration satisfied requirements of Rule 12(b)), *aff'd,* 165 F.2d 970 (3d Cir.1948); *Smith v. Pay–Fone Systems, Inc.,* 627 F.Supp. 121 (N.D.Ga.1985) (denying motion for default for failure to answer where party filed timely motion for stay pending arbitration).

Defendants contend that before any Royalty or Fee payments came due under the Agreements, Isetan, IOA and plaintiffs entered into a "monetization transaction" under which Isetan, through IOA, was to prepay 100% of the Minimum Royalty under the Operating License Agreement through the year 2011, and a smaller amount of Fees payable under the Technical Assistance Agreement. They contend that they accomplished this "monetization" or prepayment of future Royalties and Fees through the Yen Loan. For defendants, the four billion Japanese yen represents the then present value of those payments discounted at an agreed rate. They argue that this adversary proceeding forms part of and depends upon the outcome of the arbitration proceeding because:

1. the complaint seeks recovery of "past and future [R]oyalties and related [F]ees" arising out of the [Agreements]" (Complaint at 2, ¶ 1), while among the "Disputes, Differences and Claims" asserted by plaintiffs in the arbitration is Barneys Japan's alleged failure to pay Royalties owing under the Operating License Agree-ment which gives them the right to terminate the Agreements; and

2. IOA and Barneys Japan's defense in the adversary proceeding and one of Isetan's and Barneys Japan's defenses in the arbitration and the basis for their counterclaim therein, is that Barneys Japan paid the Royalties to IOA in accordance with the Letters of Direction.

They contend that the Letters of Direction are "inextricably involved" in both proceedings, that under ¶¶ 20 and 11(b) of the Operating License and Technical Assistance Agreements, respectively [5], the parties have agreed to arbitrate disputes regarding the Letters of Direction and that pursuant to the Federal Arbitration Act we should enforce that agreement by permitting the arbitrators to determine the parties' rights thereunder before considering the merits of this litigation.

Defendants argue that if the arbitrators find that the Agreements terminated due to Barneys Japan's default under the Operating License Agreement this litigation will be moot. Conversely, they assert that if the arbitrators find that Barneys Japan performed strictly in accordance with the Agreements and Letters of Direction it means:

(i) Section 544(a)(1) would not come into play because:

· New York's Civil Practice Law and Rules governs application of § 544(a)(1), and under that section a judicial lien creditor steps into the shoes of the judgment debtor and cannot get a lien on property to which the debtor had no contractual right.

· Under CPLR § 5201, a New York court cannot impose a judicial lien on royalty payments having a situs solely in Japan, like the Royalty payments at issue in the Arbitration.

(ii) Barneys Japan's Royalty payment to IOA could not be avoided under § 549 because:

---

5. Those identical provisions state as follows:
   All disputes, differences or claims, which the parties have not been able to resolve by mutual agreement, arising out of or relating to this Agreement, its performance or termination shall be settled and finally determined by arbitration.
   Operating License Agreement ¶ 20; Technical Assistance Agreement ¶ 11(b).

· Barneys Japan's transfers in the course of continuing performance under the unrejected agreement would be deemed "authorized" under §§ 363(c)(1), 365(a), 1107 and 1108 of the Bankruptcy Code and therefore not avoidable under § 549.

· The transfers would not be transfers of "estate property" because under the Letters of Direction the royalties would be deemed irrevocably "earmarked" for IOA's benefit.

(iii) The Royalties would not be subject to turnover under § 542 because:

· The Royalties properly paid to IOA in the first instance are subject to IOA's rights of recoupment irrespective of the automatic stay and lien perfection issues.

Thus, they urge that as to IOA, under either 28 U.S.C. § 1334(c) or our inherent jurisdiction we should stay this litigation pending resolution of the arbitration. Plaintiffs deny any overlap between this action and the arbitration proceeding. They correctly note that IOA is not a party to the arbitration and urge that, unlike that proceeding, this litigation involves the enforceability of IOA's security interests in the Collateral obtained under the Pledges. They deny that in the arbitration they are challenging the enforceability of the Letters of Direction or Barneys Japan's right to pay the Royalties directly to IOA and view as irrelevant defendants' counterclaim and related defense therein. They maintain that because the Letters of Direction derive from the Pledges, rather than the Agreements, defendants assertions regarding the enforceability of the Letters of Direction must be resolved herein, and not in the arbitration proceeding. Plaintiffs dispute defendants' analysis of the facts and their application of the relevant Bankruptcy Code provisions and deny that this litigation will be moot if the arbitrators rule that Barneys Japan breached the Agreements.

This adversary proceeding concerns whether, as a matter of federal bankruptcy law, plaintiffs can avoid IOA's allegedly unperfected security interests in the Collateral and recover past and prohibit future transfers of alleged estate property. It does not involve the interpretation or enforceability of the Agreements because IOA's interest in the Collateral does not arise under the Agreements. It is created under the Yen Loan and Pledges. *See* Yen Loan ¶¶ 1, 6; Pledges ¶¶ 2, 4. Those agreements do not contain arbitration clauses. To the contrary, they require that disputes thereunder be resolved under New York law in state or federal court.

We disagree with defendants that the claims plaintiffs are asserting in the arbitration proceeding relate to the validity and/or enforceability of the Letters of Direction. Plaintiffs do not contend that Barneys Japan breached the Agreements by making Royalty payments to IOA and do not seek to recover any Royalties paid by Barneys Japan to IOA. *See* Statement of Arbitration Claim ¶ 43. During argument of this motion, they conceded that the Letters of Direction mandate that Barneys Japan make the Royalty payments to IOA.

We also disagree that the Agreements and Letters of Direction mandate that the arbitration counterclaim be arbitrated. The letters do not contain arbitration provisions. In part, the Agreements speak of arbitrating "disputes, differences or claims ... arising out of or relating to [the] Agreement, its performance or termination [.]" *See supra* n. 5. The declaratory relief Barneys Japan and Isetan seek in the arbitration counterclaim falls outside the scope of the arbitration provisions both because defendants are seeking a determination of their property rights in the Royalties and because plaintiffs do not dispute that under the Letters of Direction Barneys Japan must pay the Royalties to IOA. They do not argue that defendants breached the Agreements by making those payments.

■ We first consider the impact of the Federal Arbitration Act on this litigation. In part, it states that

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbi-

tration has been had in accordance with the terms of the agreement . . .

9 U.S.C. § 3; *see also* 9 U.S.C. § 4 (providing that any party aggrieved by the alleged refusal of another to arbitrate under a written arbitration agreement may petition a federal district court for an order compelling arbitration). There is a strong policy favoring arbitration as a means of dispute resolution. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 130 (2d Cir. 1997); *Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42 (2d Cir.1993); *Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.1977), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). Defendants correctly note that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38 (Dec. 29, 1970), as implemented in the federal courts under 9 U.S.C. §§ 201–208, recognizes the enforceability of arbitration agreements in international transactions. *See* Convention, Article II ("[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contracted or not, concerning a subject matter capable of settlement by arbitration"). The United States and Japan are parties to the Convention. *Id.* Article XVI.

■■■ On the facts of this case, we find " 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *See Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d at 48 (quoting *Concourse Village, Inc. v. Local 32E,* 822 F.2d 302, 304 (2d Cir.1987)). The Federal Arbitration Act is not implicated herein. Even assuming, *arguendo,* that the arbitration provisions could be construed to encompass the issues raised either in this litigation or by defendants in the arbitration counterclaim, we would not compel the matter to be resolved in the pending arbitration. The strong federal policy favoring rigorous enforcement of arbitration clauses may be overridden "by a countervailing policy manifested in another federal statute." *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). The Bankruptcy Code is such a federal statute. *See, e.g., Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 59 (3d Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *In re Chas P. Young Co.,* 111 B.R. 410, 416–18 (Bankr. S.D.N.Y.1990); *Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.),* 65 B.R. 993, 998 (Bank.E.D.N.Y.1986). The strength of that countervailing policy and, thus, our discretion not to give effect to a valid arbitration clause, largely depend on whether we have core jurisdiction to adjudicate the claims that defendants seek to be arbitrated. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1157 (3d Cir.1989); *United States Lines, Inc. v. Amer. Steamship Owners Mut. Prot. and Indemnity Assoc., Inc. (In re United States Lines, Inc.),* 199 B.R. 465, 474 (S.D.N.Y.1996); *In re Spectrum Information Technologies, Inc.,* 183 B.R. 360, 363 (Bankr. E.D.N.Y.1995). The causes of action alleged in the adversary complaint fall within our core jurisdiction. The issues raised by defendants regarding the rights and interest granted to Barneys Japan under the Letters of Direction are core matters because they focus on the extent of those debtors' property rights. *See* 28 U.S.C. § 157(b)(2)(A) and (O). We can and should resolve those matters in the context of this litigation.

■■■ We now consider whether to stay or abstain from this litigation as to IOA pending resolution of the arbitration. Courts have the inherent power to regulate their dockets and should use it to stay litigation pending resolution of another case or arbitration proceeding where it will dispose of or narrow the issues to be resolved in that litigation. *See, e.g., Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Taunton Gardens Co. v. Hills,* 557 F.2d 877, 879 (1st Cir.1977).

That power resides in the bankruptcy court. *E.g., In re Willey,* 19 F.3d 1442 (9th Cir. 1994) (affirming bankruptcy courts' exercise of its power to control its docket under 11 U.S.C. § 105(a)); *In re Great American Pyramid Joint Venture,* 144 B.R. 780 (W.D.Tenn.1992). Section 1334(c) states, in relevant part, that:

> [n]othing in this section prevents a district court in the interests of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(c)(1). We have already determined that the issues to be resolved in this litigation and the arbitration proceeding do not overlap. Moreover, contrary to defendants' assertion, this litigation will not be mooted if the arbitrators find that Barneys Japan breached the Agreements. That is because the Collateral subject to this litigation includes the Minimum Royalties, and under ¶ 16(b) of the Operating License Agreement, Barneys Japan must pay the Minimum Royalties through the year 2011 even if it is in default under the Agreements. There is no purpose in staying this litigation as to IOA, or abstaining therefrom, pending a decision in the arbitration proceeding.

### Conclusion

We deny defendants' motion (i) as to Barneys Japan, to stay this litigation under the Federal Arbitration Act in favor of the arbitration provision; and (ii) as to IOA, to stay this adversary proceeding or abstain therefrom pending completion of the arbitration.

SETTLE ORDER.