333 A.2d 758
# CHESTER CITY SCHOOL AUTHORITY, Plaintiff-Appellee,

v.

# ABERTHAW CONSTRUCTION COMPANY,
## Appellant, et al., Defendants.

Supreme Court of Pennsylvania.

Argued Jan. 17, 1973.

Decided Feb. 21, 1975.

Rehearing Denied April 1, 1975.

Kenneth M. Cushman, Howard D. Venzie, Jr., Pepper, Hamilton & Scheetz, Philadelphia, for appellant.

Joseph T. LaBrum, Jr., Leo A. Hackett, Fronefield, deFuria & Petrikin, Clement J. McGovern, Jr., Media, for plaintiff-appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

The Chester City School Authority commenced a civil action in assumpsit, in January 1972 alleging breach of a construction contract against Aberthaw Construction Company, American Sanitary Sales and Service Co., Inc., Hobbs & Company, Inc. and their insurance carriers. Almost concurrent with the filing of the complaint in assumpsit the contractors filed a Demand for Arbitration with the American Arbitration Association pursuant to the provisions of their contracts. The School Authority responded by commencement of an equity action, against Aberthaw, American Sanitary Sales and Service Co., Inc., and their insurance carriers.[1] The Equity Court, by stipulation of counsel, consolidated the actions for argument and disposition. The Court issued a Decree dismissing the defendants' preliminary objections to the complaint in equity and preliminarily restrained and enjoined any and all arbitration proceedings pertaining to all disputes which formed the subject of the assumpsit action. The Court also issued an Order in the assumpsit action dismissing defendant's Petition for Stay of Proceedings Pending Arbitration. Aberthaw has instituted these appeals.[2,3]

1. Hobbs & Company, Inc. was not a party to this suit.

2. Appeal in equity action at No. 70 is before this Court under Act of February 14, 1866, P.L. 28, § 1, 12 P.S. § 1101 (1953) and the "Appellate Court Jurisdiction Act of 1970", Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202 (Supp.1974–75). Since the same issues are involved in the appeal in the assumpsit

3. See note 3 on page 347.

### I. Motions to Quash Appeals

██ Appellee, Chester City School Authority, has filed Motions to Quash appeals in both the equity and the assumpsit actions. Specifically with reference to the appeal at No. 70 (Equity), appellee argues that it was untimely filed because it was not perfected within 20 days of the filing of the Decree. This argument is premised on the mistaken belief that the appeal was brought under § 211.502(c) of the Appellate Court Jurisdiction Act of 1970.[4] Section 211.502(c) provides:

"(c) Interlocutory Appeals.—A petition for allowance of appeal from an interlocutory order shall be filed within twenty days of its entry."

Clearly this section is inapplicable to the appeal under consideration. Subsection (c) is concerned with the filing of a petition for allowance of appeal in those cases where the allowance of an appeal is discretionary. Here, appellant is appealing from the grant of a preliminary injunction. We have on many occasions stated that an order either granting or refusing a preliminary injunction, although it may be interlocutory in nature, is nevertheless appealable as a final order. Act of 1866, February 14, P.L. 28, § 1, 12 P.S. § 1101, as amended, Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.-509(g)(21). *National Grange Mutual Insurance Compa-*

action (Appeal No. 92), this Court accepted certification of this appeal from the Superior Court under the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.205 (Supp.1974–75).

3. Initially, an appeal of American Sanitary Sales and Service Co., Inc. was filed and docketed with the instant appeals. Subsequently, the Prothonotary was notified by counsel that the appeal of American Sanitary Sales and Service Co. was to be discontinued. Through a clerical error, this information was misinterpreted to mean a discontinuance of the entire action. Regrettably, this mistake was not called to the Court's attention until the receipt of a letter from the instant appellant's counsel dated January 2, 1975.

4. Act of July 31, 1970, P.L. 673, No. 223, art. I, § 101, 17 P.S. § 211.101 et seq. (Supp.1974–75).

*ny v. Kuhn,* 428 Pa. 179, 236 A.2d 758 (1968) ; *Hagy v. Premier Manufacturing Corp.,* 404 Pa. 330, 172 A.2d 238 (1961) ; *Dozor Agency v. Rosenburg,* 403 Pa. 237, 109 A.2d 771 (1961). The Act of 1866, insofar as it permits the right of appeal from the grant or denial of a preliminary injunction, was not repealed by the Appellate Court Jurisdiction Act of 1970 since it did not vest jurisdiction and power in courts in any manner inconsistent therewith. See, Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.509(g). Thus, the appeal at No. 70 falls within the purview of § 211.501(a),[5] which allows, under § 211.502(a),[6] a period of 30 days to perfect an appeal. The appeal having been perfected within the 30-day period is therefore timely and the objection is without merit.

As to the Motion to Quash at No. 92 (Assumpsit), appellee contends that appellant, by filing a Petition to Stay Proceedings Pending Arbitration, is in effect raising a question of jurisdiction and therefore that appeal is controlled by 17 P.S. § 211.502(d) which limits the filing period to 20 days from the entry of an order. As pointed out by this Court in *Teodori v. Penn Hills School District Authority,* 413 Pa. 127, 134, 196 A.2d 306, 310 (1964), the defense of arbitration does not go to the court's jurisdiction over the subject matter. In *Borough of Ambridge Water Authority v. J. Z. Columbia,* —— Pa. ——, 328 A.2d 498 (1974), we noted that an agreement to arbitrate is an election by the parties to select another forum to resolve disputes. While it is binding on the signators to that agreement, this private agree-

---

5. "§ 211.501 Interlocutory orders
   (a) Appeals Authorized by Law.—An appeal authorized by law from an interlocutory order in a matter shall be taken to the appellate court having jurisdiction of final orders in such matter."

6. "§ 211.502 Time for appeal; procedure
   (a) Generally.—Except as otherwise provided in this section an appeal under this act from any order shall be filed within thirty days of its entry."

ment by the parties does not have the power to divest the court of jurisdiction.

This appeal was in fact brought under the Act of April 25, 1927, P.L. 381, No. 248, § 15; as amended, Act of 1971, June 3, P.L. 118, No. 6, § 1 (§ 509(a)(84)), 5 P.S. § 175(b) (Supp.1974–75), and Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.509(g)(31). This section provides:

"175. Appeals

(b) An appeal may be taken to the Supreme or Superior Court, as in cases of final judgments, from an order either staying or refusing to stay the trial of a suit or proceeding pending arbitration, or from an order either directing or refusing to direct the parties to proceed to arbitration."

Here again, the Appellate Court Jurisdiction Act of 1970 did not repeal the right to appeal this type of order since the Act of 1927 is not inconsistent with the Appellate Court Jurisdiction Act. This appeal, being authorized by law, was properly appealed under 17 P.S. § 211.501(a) and within the time limit of 30 days pursuant to 17 P.S. § 211.502(a).

## II. Merits

■ Having found the Motions to Quash to be without substance, we now direct our focus to the issues on the merits herein raised. In April 1968 Aberthaw Construction Company entered into a written building construction contract whereby Aberthaw would act as the general contractor, providing all necessary labor, materials and supervision for the construction of the Christopher Columbus Elementary School in Chester, Pennsylvania. The scheduled completion date was September 25, 1969. However, as a result of unanticipated delays in construction the project continued into the year of 1971. On September 13 and 14, 1971, after a substantial por-

tion of the construction was completed under the contract, flooding waters caused severe damage to the uninsured school building and grounds. The School Authority made immediate demand on Aberthaw and several other prime sub-contractors[7] to proceed with the correction and repair of the damaged work at the contractors' expense. The Chester School Authority maintained that the repair work was to be completed pursuant to the existing contractual agreement.

Aberthaw Construction Company notified the School Authority in writing that it was not responsible for the flood damages, and would not perform any repair or corrective work without additional payment. On September 21, 1971, the School Authority adopted a resolution calling upon all of the contractors to repair and replace all flood damaged construction. When this was refused, the School Authority on December 14, 1971, adopted another resolution declaring Aberthaw and the other contractors in default of their respective contracts.

The Equity Court in its Opinion, framed the issue as follows:

"Are the contracting parties bound by their contract to arbitrate a dispute when one of them has terminated that contract, and instituted suit at law to recover for alleged breaches of contract by the other contracting parties?"

7. Act of May 1, 1913, P.L. 155, § 1; 1967, September 1, P.L. 296, No. 124, § 1, 53 P.S. § 1003 requires that all building construction contracts for the erection, construction and alteration of any public building, when the cost of such work exceeds $1500, must be awarded in the form of separate contracts for the: (1) general construction; (2) plumbing; (3) heating and ventilating; and (4) electrical work. Accordingly, as required by this Act, there were several prime contractors involved in the construction of the Christopher Columbus Elementary School project. They are Aberthaw Construction Company, as general contractor, American Sanitary Sales & Service Co., Inc., as plumbing, heating and ventilating contractor, and Hobbs & Company, Inc., as electrical contractor.

The pertinent arbitration provisions of the contracts are:

## "7.10   ARBITRATION

7.10.1   All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.-2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.  This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law.  The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

7.10.2   Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.  The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

7.10.3   The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing." [8]

8.   The contract agreement was a standard form: American Institute of Architects, Document A 201, September, 1967.

   The parties agree that the applicable prevailing arbitration law is the "Arbitration Act of 1927", Act of April 25, 1927, P.L. 381, No.

The Equity Court reviewed the arbitration provisions of the contract and concluded that based on this Court's decision in *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964), this arbitration provision does not include nor apply to the settlement of any claims arising out of repudiation or termination of the contract.

In *Borough of Ambridge Water Authority v. J. Z. Columbia, supra* 328 A.2d at 500, this Court re-stated the law of Pennsylvania:

"Fundamental in our law of contracts is the axiom that parties may write their own contracts, and that it is the function of the courts to interpret those contracts and to enforce them as made. It is now recognized in this Commonwealth that the enforcement of agreements by the parties to submit future disputes, that may arise under their agreement, to a tribunal other than the courts is not against public policy and is consistent with the concept of the courts' role in dealing with the contractual relationships of individuals.

'Settlements of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.

Contracts that provide for arbitration are valid, enforceable and irrevocable, save upon such grounds as exists in law or in equity for the revocation of any other type of contract. This is equally true of both common law arbitration and the arbitration provided in the Act of 1927.' *Mendelson v. Shrager*, 432 Pa. 383, 385, 248 A.2d 234, 235 (1968). See *also Capecci v. Capecci, Inc.*, 392 Pa. 32, 139 A.2d 563 (1958).

248 as amended, Act of June 3, 1971, P.L. 118, No. 6, § 1, 5 P.S. § 175 (Supp.1974–75).

In *Wyoming Radio v. National Association of Broadcast Employees and Technicians*, 398 Pa. 183, 186, 157 A.2d 366, 367 (1960), we stated:

> 'Arbitration is not a makeshift or a subterfuge. It is not an excuse for delay or a fan for the cooling off of tempers. It is a solemn and serious undertaking for the attainment of justice and when parties engaged in a common enterprise agree to settle by arbitration all differences which may arise between them they are bound by their commitment as much as if they had entered into a stipulation in Court.' "

See also, *Flightways Corporation v. Keystone Helicopter*, 459 Pa. 660, 331 A.2d 184 (filed January 1975).

We believe the trial court's reliance upon our decision in *Emmaus, supra*, was misplaced. There the Court, after careful consideration of the agreement, concluded that the parties intended that the obligation to arbitrate should not survive the termination of the agreement.

> "The reason we infer that the arbitration clause in this contract was not intended to survive this contract is contained in the sentence in Clause B4:08 of the contract which says that a demand for arbitration shall be filed in no case later than the time for final payment. This language indicates that the parties only intended the arbitration clause to be used during the life of the operation of the contract and not to extend after the contract had been terminated by performance, breach or otherwise. The arbitration clause also contains a sentence which says that the contractor shall not cause delay of the construction during any arbitration proceedings. This language also indicates that the parties intended the arbitration procedure to be utilized only during the life of the contract and not after the termination of the contract."
> *Emmaus Municipal Authority v. Eltz, supra* 416 Pa. at 126, 204 A.2d at 927.

The instant contract has no provision comparable to clause B4:08 which was contained in the contract under consideration in *Emmaus, supra.* However, the Chancellor and appellee have laid great stress upon the similarity between § 7.10.3 of the instant contract and the second clause referred to in the *Emmaus, supra* decision requiring that there should not be delays in construction during any arbitration proceedings. This clause, however, read in context with the other pertinent provisions, does not justify the conclusion that the parties intended the obligation to arbitrate to end at the termination of the agreement.

First the clear and unambiguous language of § 7.10.1 rejects any interpretation that the agreement should be construed as narrowly as suggested by the appellee and the court below. To accept the view urged would render the first sentence of § 7.10.1 which provides for "all claims, disputes and other matters in question . . . arising out of, or relating to, this Contract *or the breach thereof,* . . . shall be decided by arbitration . . . ." without meaning.

In the clearest terms conceivable, the drafters of § 7.-10.1 have included within the ambit of disputes to be subjected to arbitration, those breaches that would give rise to the repudiation or termination of the contract. It is therefore completely inconsistent to suggest that a unilateral repudiation or termination was intended to foreclose the right to resort to arbitration.

Further, an interpretation which would permit one party to extinguish the right of the other to proceed with arbitration of its claim by a unilateral termination of the contract, would result in rendering the provision meaningless and the protection provided thereunder illusory. Additionally, such a construction is diametrically opposed to the liberal interpretation our cases have recently stressed that arbitration agreements should receive.

Any question that may have been left after a consideration of § 7.10.1 is completely eliminated after consideration of § 7.10.2.[9] It is clear that the parties, by this section, expressly set forth the perimeters of the obligation to arbitrate and in so doing, did not state that the termination or repudiation of the agreement should be a factor. To the contrary, it set time limits, such as the applicable statute of limitations, which in most instances, would be expected to extend well beyond the termination of the contract.

In our view, § 7.10.3 was only to provide for continuation of work in those areas not related to the disagreement. It clearly was not an attempt to further amend § 7.10.2 which set forth the time limitations on the right to demand arbitration.

The injustice of the interpretation urged by appellee and accepted by the Chancellor, is dramatically demonstrated by the facts of this case. If Aberthaw had repaired the work at its own expense and later made a claim for damages, it would face a very real possibility of being denied the compensation for the extra work. Under the Pennsylvania Municipalities Act,[10] if the work involved was not within the terms of the original contract, Aberthaw would not be able to collect its expenses. Therefore, if appellant is correct in its assertion that the

9. Section 7.10.2 is limited by § 2.210 and § 2.211 of the contract which established specific deadlines in disputes where the architect has rendered a decision in writing. These exceptions are not applicable under the instant facts.

10. Act of 1945, P.L. 382, as amended, Act of May 6, 1957, P.L. 112, § 1, and Act of September 1, 1967, P.L. 293, § 1, 53 P.S. § 301 et seq.
"§ 312 Competition in award of contracts
A. All construction, reconstruction, repairs or work of any nature made by any Authority, where the entire cost . . . shall exceed one thousand five hundred dollars ($1500), . . . shall be done only under contract or contracts to be entered into by the Authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided. . . ."

extra expenses occasioned by the flood damage was not in fact included within the provisions of the original contract, and those costs exceed the sum of $1500, the School Authority would be precluded from reimbursement for these charges since bidding is required. Thus, such a construction which would require appellant to undertake those repairs in order to preserve his right to arbitrate the disagreement, places him in a position of prejudicing his right to recovery. See, *Teodori v. Penn Hills School Authority, supra; Yoder v. Luzerne Township School District*, 399 Pa. 425, 160 A.2d 419 (1960); *Scott Township School District Authority v. Branna Construction Corp.*, 409 Pa. 136, 185 A.2d 320 (1962); *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696 (1931); *Emporium Area Joint School Authority v. Anudson Const. & Building Supply Co.*, 191 Pa.Super. 372, 156 A.2d 554 (1960), reversed on other grounds, 402 Pa. 81, 166 A.2d 269.

Section 7.10.3 read in context with §§ 7.10.1 and 7.10.2 merely requires that work not in dispute must be continued during the course of the arbitration proceedings. In this situation a continuation of the work was impossible since the work in dispute was required to be performed before other uncontested portions of the construction could be completed. In such a case, § 7.10.3 was not intended to foreclose arbitration.

The Motions to Quash are denied. The Decree entering a Preliminary Injunction is reversed and the injunction is dissolved. The Order dismissing the Preliminary Objections is reversed and the Preliminary Objections are sustained. The Complaint in Equity is dismissed.

The Order dismissing the Petition to Stay Proceedings Pending Arbitration is reversed and the matter is remanded for arbitration in accordance with the agreement.

Each party to pay own costs.