PENNSYLVANIA DATA ENTRY, INC.

v.

NIXDORF COMPUTER
CORPORATION.

Civ. A. No. 90–3757.

United States District Court,
E.D. Pennsylvania.

Dec. 18, 1990.

Lawrence A. Husick, Philadelphia, Pa.,
for plaintiff.

Peter S. Greenberg, Philadelphia, Pa., for
defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Nixdorf Computer Corpora-
tion ("Nixdorf") filed a motion to dismiss
this action for failure to state a claim upon
which relief can be granted, or in the alter-
native, to stay all proceedings pending arbi-
tration of the parties' respective claims.
For the reasons set forth below, I shall
grant defendant's motion to dismiss.

Although defendant's motion to dismiss was submitted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant presented in support thereof material outside the pleadings, in particular two affidavits and one exhibit. Because material outside the pleadings has been presented and not excluded by this court, defendant's Rule 12(b)(6) motion shall be treated as a motion for summary judgment pursuant to Rule 56.

## I.

Plaintiff Pennsylvania Data Entry, Inc. ("PDE") is an entity engaged in furnishing data-entry and data-processing services to third-party customers on a contractual basis. Defendant Nixdorf develops, sells, and services computer hardware and software systems for use in data-entry and data-processing operations.

This action arises from the sale by Nixdorf to PDE of a Targon computer system ("the Targon system"). The Complaint alleges in material part that Nixdorf and PDE entered into a Master Purchase Agreement dated December 15, 1987 ("the Agreement"), pursuant to which Nixdorf agreed to furnish to PDE the Targon system. The Complaint further alleges that Nixdorf failed to meet the delivery deadlines for the Targon system, and that the system delivered by Nixdorf did not operate in conformance with representations that PDE alleges were made by Nixdorf prior to execution of the Agreement. Then, the Complaint recites the efforts of the parties to remedy the alleged deficiencies in the Targon system and PDE's purported rescission of the Agreement with Nixdorf. The Complaint sets forth claims for restitution, fraud, negligent misrepresentation, and tortious interference with contractual relations. PDE seeks money damages and declaratory relief.

Paragraph 4 of Section V of the Agreement sets forth a broad arbitration clause, providing as follows:

4. Arbitration

All controversies or claims arising out of, or relating to this Agreement, or the breach hereof, shall be settled by arbitration in the City of Boston, Massachusetts, in accordance with the Rules of Commercial Arbitration of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. Nothing herein, however, shall prevent either party from resort to a court of competent jurisdiction in those instances where injunctive relief may be appropriate.

This clause is identical to the contractual language recommended by the American Arbitration Association ("AAA") to provide for arbitration of disputes.

On May 14, 1990, PDE gave written notice to Nixdorf that it was rescinding all agreements between the parties, including the contract in issue in this case—the Master Purchase Agreement dated December 15, 1987. On June 1, 1990, plaintiff initiated this action. On July 25, 1990, defendant initiated arbitration pursuant to the arbitration clause of the Agreement and the Commercial Arbitration Rules of the AAA. Also on that day, defendant served PDE with the original of a Demand for Arbitration and filed copies of the Demand with the AAA regional office in Boston, Massachusetts.

Defendant contends that, under the test established in *John Ashe Associates, Inc. v. Envirogenics Co.*, 425 F.Supp. 238, 241 (E.D.Pa.1977), the Arbitration Act governs the transactions between the parties. Defendant also contends that this action should be dismissed, as opposed to merely stayed pending arbitration, because this court is without authority to adjudicate the merits of any of the issues raised in the dispute, as well as without authority to enter judgment upon the award of the arbitrators.

In response, plaintiff argues that it may avoid the arbitration clause because: (1) it has already rescinded the Agreement; (2) Nixdorf has consented to the rescission; and (3) there was no meeting of the minds with respect to the Agreement.

## II.

The United States Arbitration Act, 9 U.S.C. § 1 et seq. (1988) ("Arbitration

Act"), "revers[ed] centuries of judicial hostility to arbitration agreements, [and] was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.' " *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974) (citations omitted). The Act embodies a congressional declaration of a liberal federal policy favoring arbitration agreements, and the Supreme Court has agreed that questions of arbitrability must be addressed with a healthy regard for the strong federal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Section 2 of the Arbitration Act is the primary substantive provision. It declares that "a written provision to arbitrate in a contract evidencing a transaction involving commerce ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1988). The term "commerce" is defined in Section 1 of the Act to include "commerce among the several states." 9 U.S.C. § 1 (1988).

> Section 3 of the Arbitration Act provides:
> § 3. Stay of proceedings where issue therein referable to arbitration
> If any suit· or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1988).

■ With that brief background, I shall now turn to the applicability of the Arbitration Act to this case. The analysis is threefold:

1. Whether the Arbitration Act governs the transaction between Nixdorf and PDE;

2. Whether the contract at issue requires the parties to arbitrate their disputes; and

3. Whether the dispute in question is covered by the arbitration clause.

*John Ashe Associates, Inc. v. Envirogenics Co.*, 425 F.Supp. 238, 241 (E.D.Pa.1977).

Turning to the first prong of the test, the transaction between Nixdorf and PDE easily meets the statutory threshold for application of the Arbitration Act. First, the arbitration clause in the Agreement is a "written provision" as required by Section 2 of the Act. Second, the Agreement evidences a transaction involving commerce among the several states. Nixdorf is a Massachusetts corporation with its principal place of business in Massachusetts. PDE is a Pennsylvania corporation having its principal office in Pennsylvania. Moreover, the hardware and software furnished by Nixdorf to PDE was delivered in interstate commerce from Massachusetts to Pennsylvania. Accordingly, the "jurisdictional" requirements of Section 2 are met, and the Arbitration Act applies in this action. *See, e.g., Envirogenics*, 425 F.Supp. at 240–41 (concluding that the Arbitration Act was applicable in a diversity contract action).

The second prong of the test set forth in *Envirogenics* —whether the applicable contract requires the parties to arbitrate their disputes—is also satisfied. There can be no question that the Agreement contains an arbitration clause. That clause is clearly applicable to the sale to PDE of the Targon system hardware and the license of the Targon system software, both of which are the subject of the Agreement. In addition, that clause requires arbitration of disputes in accordance with the Rules of Commercial Arbitration of the AAA.

The final part of the *Envirogenics* test is whether the dispute in question is covered by the arbitration clause. This requirement is also clearly met. The arbitration clause covers "all controversies or claims arising out of or relating to [the] Agree-

ment or the breach [thereof]." As noted above, the language of this clause is identical to that recommended by the AAA to ensure arbitration of future disputes. The courts have characterized this particular AAA clause, or clauses substantially similar to it, as "broad" arbitration clauses. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967); *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243, 1244 (W.D.Pa.1983).

This action presents issues regarding the timeliness of delivery by Nixdorf of the Targon system, and the conformance of that system with the applicable specifications. These issues are hardly unusual or exotic. They are precisely the kinds of typical issues that arise in disputes between users and vendors of computer systems, and the arbitration clause in the Agreement encompasses "[a]ll controversies or claims arising out of, or relating to [the] Agreement." There can be no doubt that this broad clause mandates that this dispute be submitted to arbitration.

■ I shall now turn to plaintiff's arguments in opposition to arbitration. The first argument raised by PDE is that its notice to Nixdorf of rescission of the entire Agreement had the effect of rescinding the arbitration provision as well. This argument is without merit.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court set forth the severability doctrine regarding arbitration clauses. The Supreme Court held that under the federal Arbitration Act, there must be an independent challenge to the making of the arbitration clause before a court may avoid granting an otherwise proper motion to compel arbitration. *Id.* at 402–04, 87 S.Ct. at 1805–06. The Court stated that

> arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to

encompass arbitration of the claim that the contract itself was induced by fraud. *Id.* at 402, 87 S.Ct. at 1805.

Since the decision in *Prima Paint,* lower courts now universally hold that a claim for rescission of an agreement containing an arbitration clause does *not* defeat arbitrability. *See, e.g., Unionmutual Stock Life Insurance Co. of America v. Beneficial Life Insurance Co.,* 774 F.2d 524, 528–29 (1st Cir.1985); *Wilson Wear Inc. v. United Merchants & Mfrs., Inc.,* 713 F.2d 324 (7th Cir.1983); *International Talent Group, Inc. v. Copyright Management, Inc.,* 629 F.Supp. 587 (S.D.N.Y.1986); *Todd Shipyards Corp. v. Marine Vessel Leasing Corp.,* 456 F.Supp. 1384, 1389 (C.D.Cal. 1978).

The effect of unilateral repudiation or termination on arbitrability was also addressed by the Supreme Court of Pennsylvania in *Chester City School Authority v. Aberthaw Construction Co.,* 460 Pa. 343, 333 A.2d 758 (1975). Construing an arbitration clause virtually identical to that contained in the Master Purchase Agreement, the Court stated:

> [A]n interpretation which would permit one party to extinguish the right of the other to proceed with arbitration of its claim by a unilateral termination of the contract, would result in rendering the provision meaningless and the protection provided thereunder illusory. Additionally, such a construction is diametrically opposed to the liberal interpretation our cases have recently stressed that arbitration agreements should receive.

*Id.* at 354, 333 A.2d at 764.

In the present case, PDE has not advanced a claim that it was fraudulently induced to enter into the agreement to arbitrate "[a]ll controversies or claims arising out of, or relating to [the] Agreement" and, thus, the making of the arbitration agreement is *not* an issue. Accordingly, the arbitration clause is separable from the contract and not rescinded by PDE's attempt to rescind the entire contract.

■ PDE's second argument is that the Agreement has effectively been rescinded because Nixdorf "consented" to the re-

scission through its acquiescence and, therefore, that the parties have mutually rescinded the Agreement. Nixdorf, however, strongly disputes the allegation that it consented to the rescission. The fact that Nixdorf maintains that it did *not* consent to the rescission establishes that there is a genuine issue of fact with respect to whether there was a mutual rescission of the Agreement.

This court, however, need not resolve the issue of whether Nixdorf acquiesced to PDE's rescission of the contract because the resolution of that issue also properly belongs in arbitration pursuant to the broad arbitration clause contained in the Agreement. Following the decision of the Supreme Court in *Prima Paint*, there have been numerous decisions by courts of appeal—none of which were cited by PDE—addressing the precise question before this court—whether a dispute regarding a claim of rescission or cancellation of an agreement is itself an issue for arbitration. Those courts have applied the reasoning of *Prima Paint* and unanimously concluded that this issue is arbitrable. *See, e.g., Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.*, 774 F.2d· 524, 528–29 (1st Cir.1985); *Wilson Wear Inc. v. United Merchants & Mfrs., Inc.*, 713 F.2d 324 (7th Cir.1983); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263 (7th Cir.1976).

■ Finally, PDE argues that it need not arbitrate this dispute because there was no "meeting of the minds" with respect to the Agreement. PDE's argument fails for two reasons. First, PDE has alleged only that there was no meeting of the minds on the Agreement generally; it has *not* alleged that there was no meeting of the minds with respect to the arbitration clause. Because the Supreme Court in *Prima Paint* held that allegations of invalidity of the entire contract are unavailing to defeat arbitration, the claims of invalidity must be directed specifically to the arbitration clause itself. Second, even if PDE had alleged that there was no meeting of the minds with respect to the arbitration clause, there is no ambiguity in the standard AAA clause at issue to justify a finding that it fails because of a lack of a meeting of the minds. *See Unionmutual Stock Life Ins. Co. of America v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir.1985).

### III.

■ Next, I must decide whether to stay this action pending arbitration or dismiss it altogether. Each of the claims asserted in PDE's Complaint—declaratory judgment, restitution, fraud, negligent misrepresentation, and tortious interference with contractual relations—arise from or relate to the Master Purchase Agreement. Hence, this court is without authority to adjudicate the merits of any of the issues raised in this dispute.

In addition, this court is without authority to enter judgment upon the award of the arbitrators. The arbitration clause in the Agreement provides that arbitration shall take place in the City of Boston, Massachusetts, and Nixdorf has already initiated arbitration in Boston. The arbitration clause further provides that "judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof."

The Arbitration Act speaks directly to the issue of which courts have jurisdiction to enter judgment upon the award of the arbitrator(s). Section 9 of the Act provides in relevant part:

§ 9. Award of arbitrators; confirmation; jurisdiction; procedure

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. *If no court is specified in the agreement of the parties, then such application may be made to the United States*

*court in and for the district within which such award was made.*

9 U.S.C. § 9 (emphasis added).

In the present case, the parties have *not* specified the court which may enter judgment upon the arbitration award. Instead, the parties have agreed that the award may be entered in a court having jurisdiction over the award. Under section 9 of the Act, in the absence of a reference to a specific court in the arbitration agreement, the court having jurisdiction is the United States court for the district in which the arbitration award was made. In this case, that court is the United States District Court for the District of Massachusetts—the court for the federal district which includes the City of Boston, the city where the parties have agreed to arbitrate and where the award will be made.

## IV.

This court is bound to respect and enforce the contractual obligations of the parties. The parties entered into an agreement to arbitrate "any controversies or claims arising out of, or relating to" the Master Purchase Agreement, and plaintiff has made no claim that it was fraudulently induced to enter into that arbitration agreement. The dispute between PDE and Nixdorf is clearly arbitrable: the Arbitration Act governs; the Master Purchase Agreement requires arbitration; and this dispute falls within the broad arbitration clause of the Agreement. Therefore, the parties are bound to resolve their disputes pursuant to the arbitration clause in the Agreement.

Furthermore, because all of the disputes between the parties relating to the Agreement are arbitrable, the Arbitration Act denies this court authority to adjudicate the merits of the parties' claims. In addition, pursuant to Arbitration Act and the Master Purchase Agreement, I have no jurisdiction to enter judgment on the arbitration award. Accordingly, I shall dismiss this action by entering judgment in favor of defendant and against plaintiff.