## H.L. Wiker and Sons Inc. v. Groff Farm Restaurant & Golf Club Inc.

*William J. Cassidy,* for plaintiff.
*James R. Adams,* for defendants.

GEORGELIS, *J.,* November 4, 1992—Before us are the preliminary objections of all of the defendants to the plaintiff's second amended complaint. The objections are in the nature of two demurrers and a motion to strike, but the first demurrer has been withdrawn by a stipulation of the parties. The motion to strike is directed at the plaintiff's claim for punitive damages, but we will not

address it, because we will grant the second demurrer which seeks the dismissal of the second amended complaint on the ground that the dispute between the parties must be resolved pursuant to provisions in their contract and not by litigation.

This lawsuit arises out of the parties' written contract agreement, the terms of which provided that the plaintiff would furnish, and be compensated for by the defendants, all of the labor and materials for the construction of an 18-hole golf course and practice range. The second amended complaint alleges that the plaintiff discontinued the work because the corporate defendant had not made progress payments and that the individual defendants fraudulently induced the plaintiff into entering into the agreement by misrepresenting that financing had been obtained and that they owned the land on which the construction was to take place. It contains four counts: breach of an express contract; breach of an implied contract; unjust enrichment; and fraudulent misrepresentation.

As noted above, the defendants' second demurrer seeks the dismissal of the action on the ground that the agreement provides a dispute resolution procedure without litigation. The plaintiff's position is that the claims it has against the defendants do not relate to the work it performed under the agreement and that they are not, therefore, encompassed by that dispute resolution procedure.

Paragraph 5 of the general conditions of the agreement provides, in part, as follows:

"A. The architect/engineer will be the initial interpreter of the terms and conditions of the contract documents and the judge of the performance thereunder. In his capacity as interpreter and judge he will exercise his best efforts to insure faithful performance by both the owner and the contractor. He will not show partiality to either and shall not be liable for the results of any interpretation

or decision rendered in good faith. Claims, disputes and other matters relating to the execution and progress of the work or the interpretation of or performance under the contract documents shall be referred initially to the architect/engineer for decision which he shall render in writing within a reasonable time.

"D. *Arbitration:* All decisions of the architect/engineer shall be final except in cases involving time or financial considerations, which, if no agreement regarding such cases is reached, shall be subject to arbitration. The demand for and procedure of arbitration, and the selection of arbitrators shall conform to the Construction Industry Arbitration Rules of the American Arbitration Association."

We begin our analysis of the issue before us with the holdings in three Pennsylvania Supreme Court cases, to which the defendants refer us and which we believe set forth the law in Pennsylvania on clauses for the out-of-court resolution of contractual disputes. The first of these, *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974), held that such clauses are valid, enforceable and generally irrevocable. The second, *Wyoming Radio Inc. v. National Association of Broadcast Employees & Technicians,* 398 Pa. 183, 157 A.2d 366 (1960), held that, where such a clause exists by the agreement of the parties to a contract, the parties are bound by their commitment to resolve any contractual dispute under the specific terms of the clause, just as if they had entered into a stipulation in court. The third, *Chester City School Authority v. Aberthaw Construction Co.,* 460 Pa. 343, 333 A.2d 758 (1975), held that it is improper to avoid the provisions of such a clause by a party's unilateral termination of the contract.

The plaintiff does not argue against the holdings of these three cases, but it contends that its dispute with

the defendants is not covered by paragraph 5 of the agreement's general conditions. Specifically, it contends that the language in the first sentence of sub-paragraph 5A limits its applicability to disputes involving the "terms and conditions of the contract documents" and that, since the second amended complaint contains claims premised on implied contract, unjust enrichment and fraudulent misrepresentation, paragraph 5 cannot be invoked to resolve these claims and such other matters as oral modifications of the agreement, consequential damages and other disputes outside the contractual document.

In support of this contention, the plaintiff refers us to *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975), to which the defendants also refer us. *Flightways* involved a contract which provided for the arbitration of "any controversy or claim arising out of or relating to" the contract and a lawsuit which alleged fraud in the inducement and mutual mistake. Our Supreme Court held that an arbitration agreement "cannot be circumvented ... because of fraud in the inducement or mutual mistake" and that, only when the claim of fraud in the inducement goes specifically to the arbitration provision itself should the matter be adjudicated by a court rather than an arbitrator. *Id.* at 663, 331 A.2d at 186.

We have reviewed the plaintiff's fraudulent misrepresentation claim, and it is clear that it does not allege fraud in the inducement as to the agreement's arbitration provision. Therefore, we believe that *Flightways* is authority for the defendants' position that the fraudulent misrepresentation count of the second amended complaint does not preclude the invocation of paragraph 5 of the agreement's general conditions. As to this count, the plaintiff contends further that paragraph 5 does not apply because the fraudulent misrepresentation claim is against

the individual defendants, who were not parties to the agreement. The agreement, a copy of which is attached to the second amended complaint as Exhibit A, was signed by the defendant, Elizabeth R. Groff, as president of the corporate defendant, and was sealed by the defendant, Abram B. Groff, as secretary of the corporate defendant. Therefore, the plaintiff accurately states that the individual defendants were not parties to the agreement. However, the fraudulent misrepresentation count fails to allege that the individual defendants were not acting as corporate officers, and we do not believe, therefore, that this is a sufficient consideration to remove the fraudulent misrepresentation claim from the coverage of paragraph 5.

As to the plaintiff's contentions that its claims for breach of an implied contract and unjust enrichment, along with matters such as oral modifications of the agreement and consequential damages, do not fall within the "terms and conditions of the contract documents" language of paragraph 5, we believe that the plaintiff asks us to interpret that language too narrowly. It suggests that this language is much narrower than the language in *Flightways,* which language, as noted above, provided for the arbitration of "any controversy or claim arising out of or relating to" the contract. We disagree and note that sub-paragraph 5A, in addition to speaking of the "terms and conditions of the contract documents," also states, as noted above:

"Claims, disputes and other matters relating to the execution and progress of the work or the interpretation of or performance under the contract documents shall be referred initially to the architect/engineer for decision which he shall render in writing within a reasonable time."

Our Supreme Court, in interpreting the arbitration clause in *Flightways,* stated that it would be difficult to contrive broader language than the "any controversy or claim arising out of or relating to" language in that contract. We

believe that the same is true of the above language of sub-paragraph 5A. That is, we believe that "[c]laims, disputes and other matters relating to the execution and progress of the work or the interpretation of or performance under the contract documents" is as encompassing as "any controversy or claim arising out of or relating to."

Furthermore, we have read the averments of Count II, breach of implied contract, and Count III, unjust enrichment, of the second amended complaint, and we believe that the plaintiff is straining in its effort to argue that these two claims do not fall within the requirement of sub-paragraph 5A. In fact, Count II appears to aver that the express contract, i.e., the agreement, is an implied contract. Perhaps this count is intended as an alternative cause of action, but we find it inconsistent in that the pleadings contain no indication of the invalidity of the agreement and in that its prayer seeks the compensation provided for by the agreement. The same, we believe, is true of Count III.

Finally, we believe that matters such as the oral modification of a written contract and the consequential damages resulting from the breach of a contract are matters which are very routinely associated with written contracts. It would be unreasonable for the parties to expect paragraph 5 not to apply to these potential developments to their agreement.

The plaintiff also refers us to *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964), and *Chester City School Authority v. Aberthaw Construction Co.*, 460 Pa. 343, 333 A.2d 758 (1975). *Emmaus* involved contract language which required that a demand for arbitration be filed no later than the time for final payment, and the Supreme Court held that this language was indicative of the parties' intent that arbitration be used only during the life of the contract and

that litigation was therefore appropriate. *Chester City School Authority* did not involve a provision as the one in *Emmaus,* and the Supreme Court held that claims arising after the termination of the contract had to be arbitrated.

The plaintiff presents the holdings in these two cases, we believe, in support of its position that the parties here could not have intended the arbitration of disputes which are outside the expertise of the arbitrator. This position asks us to speculate on the parties' intent, which we are not willing to do, especially in light of the very clear language of sub-paragraph 5A. Any evidence of the parties' intent outside the four corners of the agreement, may very well be thwarted by the parol evidence rule. Furthermore, as the defendants point out in their reply brief, we believe that *Chester City School Authority* is authority for our conclusion here, in that the agreement contains no time limitation for the applicability of its paragraph 5.

For all of these reasons, we believe that the plaintiff must present the claims it has asserted in its second amended complaint for resolution pursuant to paragraph 5 of the general conditions of its agreement with the corporate defendant. Accordingly, we enter the following

## ORDER

And now, November 4, 1992, for all of the reasons stated in the foregoing opinion, the preliminary objection of the defendants, Groff Farm Restaurant & Golf Club Inc., Elizabeth R. Groff and Abram B. Groff, in the nature of a demurrer to the plaintiff's second amended complaint, is sustained. The second amended complaint is dismissed.