## CGU Insurance Co. v. Pinkerton Computer Consultants Inc.

C.P. of Philadelphia County, June Term 2000, no. 2178.

*Nicholas Poduslenko,* for plaintiff.
*Lee A. Rosengard,* for defendant.

SHEPPARD, Jr., *J.,* August 31, 2000—Plaintiff-petitioner, CGU Insurance Company, filed a petition to stay the arbitration requested by defendant-respondent, Pinkerton Computer Consultants Inc. Pinkerton filed an answer in opposition. For the reasons set forth this court denies that petition.

## FACTUAL AND PROCEDURAL HISTORY

On January 2, 1996, CGU, previously known as General Accident Insurance Company of America,[1] entered

---

1. All references to "General Accident Insurance Company of America" or "GA" in this opinion or the system maintenance services agreement shall be understood as CGU, as GA's successor-in-interest.

into a system maintenance services agreement with Pinkerton. See exhibit "A" attached to petition. Pursuant to the agreement, Pinkerton was to provide certain engineering, installation and software maintenance services, as well as technical and emergency support for CGU's computer system. See *id.*

The agreement had a three year term commencing April 1, 1996 (after the initial transition period) and ending March 31, 1999, the initial term. See *id.* at ¶8.1. CGU, alone, had the option of renewing the agreement for an additional two year term by giving Pinkerton *written notice* of renewal at least 180 days prior to the end of the initial term. *Id.* (emphasis added) The agreement also included the following clauses pertaining to termination:

"8.3 Grounds For Termination . . .

"(B) Convenience. GA may terminate this agreement for any reason whatsoever upon 180 days prior written notice to Pinkerton. Upon such notice, Pinkerton shall invoice GA for a sum equal to $60,000 per month multiplied by the remaining number of months in this agreement, the product then being discounted to present value with an interest rate based on the prime rate as obtained from the Wall Street Journal or other financial publication as of the date of the GA notice of termination. Upon such early termination, Pinkerton and GA shall proceed in accordance with section 8.4 of this agreement. . . .

"8.4 Procedures Upon Expiration or Termination

"If this agreement expires or is terminated, then GA and Pinkerton shall proceed in accordance with this section. GA either may immediately cease using the

Pinkerton services, or in *GA's sole discretion,* GA may proceed in accordance with the provisions of section 8.5 of this agreement. GA shall give Pinkerton *express written notice* of the election that GA chooses.

"8.5 Transition Out Period

"If GA elects to proceed in accordance with this section, then Pinkerton shall continue to provide the Pinkerton services and charge the fees set forth in section 4.2 for *up to three months after the termination date or expiration date,* as the case may be. During the transition out period, GA may terminate the Pinkerton services upon 30 days notice." *Id.* at ¶¶8.4-8.5. (emphasis added)

"In addition, the agreement contained an arbitration clause which provides:

"6.2 Binding Arbitration

"If Pinkerton and GA are unable to resolve a dispute, in accordance with section 6.1, either GA or Pinkerton may invoke by written notice to the other (an 'arbitration notice') the provisions of this section.

"(A) *All disputes which may arise between GA and Pinkerton* will be finally settled by binding arbitration held according to the commercial arbitration rules of the American Arbitration Association, to which GA and Pinkerton hereby agree." *Id.* at ¶6.2. (emphasis added)

The parties agreed that, in the event of a dispute, Pinkerton would continue to provide its services, for all instances not related to billing, for a period not to exceed 90 days. *Id.* at ¶6.3. The agreement further provides that it "cannot be modified except by a *writing* executed by *both* Pinkerton and GA." *Id.* at ¶9.7.

CGU allegedly elected not to renew the agreement prior to the expiration of its initial term, and it did not provide Pinkerton with a written notice of renewal. Thus, CGU asserts that the agreement had expired on March 31, 1999. Petition at ¶¶4-5. CGU also contends that the parties attempted to negotiate an entirely new agreement with a start date of April 1, 1999 to expire March 31, 2000, but that these negotiations were unsuccessful. *Id.* at ¶6; Pet. memorandum of law at 5. Further, CGU contends that upon the expiration of the agreement, Pinkerton continued to furnish services to CGU on a month-to-month basis. Then, on March 13, 2000, CGU sent Pinkerton a termination letter advising Pinkerton that, as of March 27, 2000, it would be substituting for Pinkerton's services with those of Keane Inc., and that it would honor its invoices with Pinkerton up until March 24, 2000. Exhibit "B," attached to petition.

On March 21, 2000, Pinkerton responded objecting to the termination letter, stating "[a]lthough the agreement was not renewed in writing, we have all been operating under the agreement as if it had been, effectively a de facto renewal." Exhibit "C," attached to petition. This letter also advised CGU that Pinkerton may pursue legal action for breach of contract if CGU continues to demand that Pinkerton terminate on March 24, 2000. *Id.* Pinkerton maintains that six months prior to the expiration of the initial term, the parties orally agreed to extend the agreement for an additional two years for a period ending March 31, 2001. Resp. memorandum in opposition at 2. See also, exhibit "D," attached to petition, at ¶9. Pinkerton also asserts that it sent CGU a let-

ter dated October 21, 1998, constituting a renewal of the agreement, which materially changed only the monthly rate payable by CGU to Pinkerton. The remaining terms remained unchanged. *Id.* at ¶10.[2]

On May 31, 2000, Pinkerton filed a statement of claim with the American Arbitration Association, asserting that CGU wrongfully terminated Pinkerton in breach of the agreement and seeking damages. See *id.* On June 19, 2000, CGU filed the instant petition to stay arbitration. On July 19, 2000, Pinkerton filed its answer and accompanying memorandum of law in opposition. On July 21, 2000, CGU filed a reply.

## DISCUSSION

This court may stay arbitration proceedings on a showing that there is no agreement to arbitrate. 42 Pa.C.S. §7304(b). In Pennsylvania, when one contracting party seeks to prevent another from proceeding with arbitration, judicial inquiry is limited to determining: (1) whether a valid arbitration agreement exists between the parties; and, if so (2) whether the dispute involved is within the scope of the arbitration provision. *Midomo*

---

2. The letter states in pertinent part: "As per your request enclosed are copies of the general agreement for system maintenance services between Pinkerton Computer Consultants Inc. and CGU Insurance Co. It has been our pleasure to serve CGU and its predecessor General Accident for the last three years on this agreement and we look forward to continue our relationship with CGU on this maintenance service contract. . . . The only changes we have made to the existing contract is the labor rate category." See exhibit "D," at ¶10.

No other correspondence was attached referring to a renewal form, other than a copy of the original agreement. See *id.*

*Co. Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 186 (Pa. Super. 1999). See also, *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 663, 331 A.2d 184, 185 (1975); *Smith v. Cumberland Group Ltd.,* 455 Pa. Super. 276, 283, 687 A.2d 1167, 1171 (1997); *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 375, 632 A.2d 903, 905 (1993).

Moreover, Pennsylvania law advocates strict construction of arbitration agreements and dictates that any doubts or ambiguity as to arbitrability should be resolved in favor of arbitration. *Midomo,* 739 A.2d at 190-91; *Smith,* 455 Pa. Super. at 284, 687 A.2d at 1171; *PBS Coal,* 429 Pa. Super. at 376, 632 A.2d at 905. As noted by our Supreme Court, "an order enjoining arbitration of a particular grievance should not be granted unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute." *Lincoln University System of Higher Education v. Lincoln University Chapter of the Association of University Professors,* 467 Pa. 112, 123, 354 A.2d 576, 581-82 (1976). See also, *Midomo,* 739 A.2d at 190 (quoting *Emlenton Area Municipal Authority v. Miles,* 378 Pa. Super. 303, 308, 548 A.2d 623, 625 (1988)).

Here, the underlying issue is whether the agreement expired on March 31, 1999 after its initial term, thereby extinguishing the arbitration and termination clauses, or whether the parties orally renewed the agreement and included the same terms, notwithstanding the prohibition against oral modification.

In support of its petition, CGU contends that no valid agreement to arbitrate exists in that the agreement had

expired in March of 1999. Pet. memorandum of law at 4-7. In addition, CGU argues that the breach of contract allegations for wrongful termination fall outside the scope of the arbitration provisions of the agreement since these provisions were only effective prior to the expiration of the agreement. *Id.* at 4-7. In contrast, Pinkerton maintains that the agreement was renewed for an additional two years under the same terms which included the arbitration clause, and that the arbitration clause would cover the dispute over the agreement's termination. Resp. memorandum of law at 4-6. Pinkerton also contends that the determination of whether the agreement expired or not goes to the merits of its claim, and, therefore must be decided by arbitration and not by the court. *Id.* at 7.

Initially, this court submits that it should not make a determination whether the agreement between CGU and Pinkerton expired after its initial term, or whether the parties orally and effectively renewed the agreement. To do so would decide the entire controversy, would be premature, and is beyond the scope of judicial inquiry necessary to decide the present petition.

As stated in 42 Pa.C.S. §7304(e): "an application to stay arbitration [shall not] be granted, by the court on the ground that the controversy lacks merit or bona fides or on the ground that no fault or basis for the controversy sought to be arbitrated has been shown."

While section 7304(e) does not explicitly preclude this court from examining the merits of a controversy, cases have consistently held that the interpretation and the applicability of an arbitration agreement is initially

an issue for the arbitrators, and not for the court to determine. *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 460 Pa. 260, 265, 333 A.2d 184, 187 (1975) (holding that arbitrator, not the court, must decide the question of whether demand for arbitration is timely since it involves the interpretation of the agreement); *Santiago v. State Farm Insurance Co.*, 453 Pa. Super. 343, 348, 683 A.2d 1216, 1219 (1996) (holding that it was reversible error to make factual findings and interpret ambiguous language in determining the proper forum for arbitration where an agreement to arbitrate apparently existed); *Campbell-Ellsworth Inc. v. Holy Trinity Serbian Orthodox Church-School Congregation*, 233 Pa. Super. 126, 133, 336 A.2d 346, 349 (1975) (whether contract provisions are applicable is for the arbitrators, not the courts, to decide).

It is undisputed that the agreement included an arbitration clause, which provided in pertinent part that: *[a]ll disputes which may arise between [CGU] and Pinkerton* will be finally settled by binding arbitration held according to the Commercial Arbitration Rules of the American Arbitration Association, to which [CGU] and Pinkerton hereby agree." Exhibit "A," attached to petition at ¶6.2(A). (emphasis added)

Deciding whether the arbitration clause survived the termination of the agreement involves a question of the scope of the provision, rather than its continuing existence. This court need not now decide *when* the termination took place. Thus, without ruling on the merits of the entire controversy, this court holds that the parties did have an agreement to arbitrate for purposes of the

present petition. The court must now decide whether the arbitration clause would cover the present dispute.

Contrary to CGU's position, the arbitration clause contains broad language covering "all disputes which may arise between" the parties. Courts, which have ordered arbitration after the termination of an agreement, have examined similar broad arbitration language, that is: "[a]ll claims, disputes and other matters in question [arising out of,] or relating to, this contract [or breach thereof] . . . . shall be decided by arbitration . . . . *Shamokin Area School Authority v. Farfield Co.,* 308 Pa. Super. 271, 275, 277-78, 454 A.2d 126, 127, 129 (1982); *Chester City School Authority v. Aberthaw Construction Co.,* 460 Pa. 343, 351, 354, 333 A.2d 758, 762, 764 (1975). In *Chester City,* the Pennsylvania Supreme Court held that the contractor's right to resort to arbitration could not be extinguished by the school authority's unilateral repudiation or termination of the agreement. *Id.* at 354, 333 A.2d at 764. In *Shamokin,* the court held that the obligation to arbitrate disputes arising out of the construction contract did not end with the completion of the work despite the work-delay clause. 308 Pa. Super. at 278, 454 A.2d at 129. Likewise, in *Waddell v. Shriber,* 465 Pa. 20, 31-32, 348 A.2d 96, 101-102 (1975), the dispute involved the means by which a partnership relationship should be terminated where the partners were all members of the New York Stock Exchange and had subscribed to its rules, including the obligation to submit disputes to arbitration. The court stayed proceedings pending the arbitration. *Id.* at 33, 348 A.2d at 103.

CGU maintains that the arbitration clause was intended to be effective only prior to the termination or expiration of the agreement, as evidenced by the "work-delay" clause of paragraph 6.3 of the agreement, and the requirement that the arbitration hearing be held within 90 days of receipt of the arbitration notice under paragraph 6.2(D). Pet. memorandum of law at 6-7. In support of its position, CGU relies upon *Westmoreland Hospital Association v. Westmoreland Construction Co.,* 423 Pa. 255, 223 A.2d 681(1966); and *Emmaus Municipal Authority v. Eltz,* 416 Pa. 123, 204 A.2d 926 (1964). Those cases are distinguishable from the present case because the arbitration clause in each case explicitly stated that "no demand for arbitration shall be made after the date of final payment." *Westmoreland,* 423 Pa. at 258, 223 A.2d at 682; *Emmaus,* 416 Pa. at 126, 204 A.2d at 927. See also, *Chester City,* 460 Pa. at 353-54, 333 A.2d at 763 (distinguishing *Emmaus* where arbitration clause did not include comparable provision).

The case of *Allstate Insurance Co. v. McMonagle,* 449 Pa. 362, 296 A.2d 738 (1972) is analogous to the present dispute and instructive. In that case, the insurer refused to submit a claim for arbitration by an uninsured motorist despite an insurance policy which included an arbitration provision. 449 Pa. at 363, 296 A.2d at 739. The insurer argued that the policy had expired and was not in effect on the date of the accident. *Id.* Rejecting this argument, the court noted that "there is no question whether Allstate is a party to an arbitration agreement." *Id.* at 366, 296 A.2d at 740. The court held that all questions

arising under uninsured motorist coverage, including whether the arbitration agreement was in force on the date of the accident, must be determined by the arbitration. *Id.*

Here, the arbitration provisions did not include the explicit language used in *Westmoreland* or *Emmaus* which limited the applicability of the arbitration clause, though it did provide that Pinkerton would continue to perform its services in the event of a dispute for a period not to exceed 90 days. Exhibit "A," attached to petition at ¶6.3. Similar to *Chester City*, this court cannot now conclude that the arbitration clause was clearly intended to apply only during the life of the contract. Since there is ambiguity as to the arbitrability issue and since public policy favors any doubt to be resolved in favor of arbitration, this court submits that it should deny CGU's petition to stay arbitration.

## CONCLUSION

For these reasons, this court denies CGU's petition to stay arbitration. A contemporaneous order to this effect is being entered.

## ORDER

And now, August 31, 2000, upon consideration of plaintiff's petition to stay arbitration and defendant's opposition to it, the respective memoranda, all other matters of record, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is *ordered* that the petition to stay arbitration is *denied.*